(No. 29853.—

THE PEOPLE *ex rel.* Clyde Forsythe, Petitioner, *vs.* WALTER NIERSTHEIMER, Warden, Respondent.

*Opinion filed January 22, 1947.*

ORIGINAL PETITION for *habeas corpus.*

CLYDE FORSYTHE, *pro se.*

GEORGE F. BARRETT, Attorney General, (EDWARD WOLFE, of counsel,) for respondent.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

Clyde Forsythe, an inmate of the psychiatric division of the Illinois State Penitentiary at Menard, filed herein his original petition for a writ of *habeas corpus.* The writ was ordered to issue and the respondent, pursuant to the order of this court, filed his return and, subsequently, by leave of court filed a second motion to quash the writ and dismiss the petition. Relator filed an answer and a motion to dismiss and deny respondent's motion, and the cause is here upon the record thus made.

At the January, 1931, term of the circuit court of Vermilion county, the petitioner, Clyde Forsythe, was indicted for the crime of assault with intent to kill. On March 5,

1931, he was tried and found, by the verdict of the jury, to have been insane at the time the crime was committed and that he had not recovered from such insanity. On March 28, 1931, an order was entered by the circuit court as follows: "Released to Government authorities for confinement and treatment." The record discloses the petitioner was never actually released and was, at all times, in the custody of the sheriff of Vermilion county. On July 7, 1931, the docket entries of the court show the following order: "Defendant in court and it is ordered by the court that the defendant be confined and imprisoned in the Illinois Asylum for insane criminals at Chester, Illinois, until discharged by due process of law."

On the same date petitioner was committed to the penitentiary at Menard, Illinois, and the judgment entered by the clerk provided, "until discharged by the State Board of Pardons as authorized and directed by law, provided such term of imprisonment shall not exceed the maximum term, nor be less than the minimum term provided by law for the crime for which said defendant was convicted and sentenced, making allowance for good time as now provided by law. (Imprisoned in the Illinois Asylum for Insane Criminals until discharged by due process of law.)"

On July 17, 1931, petitioner was delivered to the Illinois Asylum for insane criminals at Menard, Illinois, where he remained until December 31, 1934, when he was transferred to the psychiatric division of the Illinois State Penitentiary where he is now incarcerated.

On February 2, 1944, petitioner was heard on his petition for *habeas corpus* in the circuit court of Randolph county, which, after full hearing, found from the manifest weight of the evidence, including testimony of physicians, that petitioner was still insane and not yet cured of his insanity, and, for that reason, was recommitted. He again presented a petition for *habeas corpus* on December 18,

1944, to the same court, and, on full hearing January 22, 1945, he was by said court again recommitted.

The petitioner does not separately enumerate the errors assigned. He makes the broad contention, however, that under the sentence and judgment he has served the maximum term provided in the judgment and is entitled to discharge by reason of having served fully the maximum term. He urges that as the verdict of the jury on March 5, 1931, finding him to be an insane person, was returned at the January term of the Vermilion county circuit court, and as the judgment and sentence was not entered until July 7, 1931, which was at the May term of court, the court thereby lost jurisdiction to impose a judgment of commitment at a term subsequent to the term at which he was found to be insane. At the time the petitioner was committed there was in force and effect a statute providing, "that all causes and proceedings pending and undisposed of in any of said courts at the end of a term shall stand continued until the next term of court." Smith-Hurd Stat. 1929, chap. 37, par. 93.

The court, in the instant case on the record here, had authority to enter judgment at a subsequent term and did not lose jurisdiction, because all the time the petitioner was in the custody of the sheriff. The order entered in the circuit court on March 28, 1931, in which it was said petitioner was "released to Government Authority for confinement and treatment" was a nullity, of no effect, and was the same as if no order had been entered. It is admitted that the court has never considered this precise question, but in the case of *People ex rel. Boenert* v. *Barrett,* 202 Ill. 287, we held that the court had a reasonable time to delay pronouncing judgment. In .the case of *People ex rel. Powers* v. *Shattuck,* 274 Ill. 491, the court held that a trial court has the power to delay pronouncing judgment for a reasonable time to hear and determine a motion for

a new trial, or in arrest of judgment, or for other proper questions. In the case of *People* v. *Penn*, 302 Ill. 488, the court adopted the rule that whether the postponement of the judgment is rightful depends upon its purpose and character, that is, the purpose for delay. Under the views above expressed and from the record here, we are not of the opinion the order entered came so late as to deprive the court of jurisdiction.

It is contended by petitioner that the judgment of commitment was void because it purports to find the petitioner guilty of a criminal offense when he was, in fact, not guilty of such offense, and ordered him committed to the Illinois State Penitentiary at Chester. It is true that a part of the judgment as entered by the clerk does not truly reflect what is shown by the judge's minutes; however, the entire record will be searched and interpreted and a deficiency in one place will be cured by what appears in another. (*People* v. *Woodward*, 394 Ill. 433; *People ex rel. Ewald* v. *Montgomery*, 377 Ill. 241.) The commitment was in accordance with the provisions of the existing statute, (Smith-Hurd. Stat. 1929, chap. 23, pars. 94 and 99,) and the judge's minutes clearly show that this was the judgment of the court.

It is to be observed that the judgment entered by the clerk contained the provision, "Imprisoned in the Illinois Asylum for Insane Criminals until discharged by due process of law." The return as made by the respondent was that the petitioner is being held in accordance with that part of the judgment finding the petitioner insane. We held, in the case of *People ex rel. Barrett* v. *Sbarbaro*, 386 Ill. 581, "In a case where a court has full jurisdiction to render one kind of a judgment and renders one including that which it had a right to render, and something more, the excess is simply void." The same rule was announced in *Belford* v. *Woodward*, 158 Ill. 122.

Petitioner further contends he was unlawfully transferred from the Illinois Asylum for Insane Criminals to the psychiatric division of the Illinois State Penitentiary. The record discloses petitioner was held and confined in the Illinois Asylum for Insane Criminals from July 18, 1931, to December 31, 1934. He was originally committed to the Illinois Asylum for Insane Criminals in accordance with the existing statute. (Smith-Hurd. Stat. 1929, chap. 23, par. 94 *et seq.*) In 1933 the penitentiaries of the State were consolidated into a single institution known as the Illinois State Penitentiary. (Smith-Hurd. Stat. 1933, chap. 108, par. 105, *et seq.*) This act provided that the criminal institutions, including "the Illinois Asylum for Insane Criminals, at Chester, are hereby consolidated into a single institution to be known as the Illinois State Penitentiary."

The Illinois Security Hospital was created under the provisions as set out in Smith-Hurd Illinois Revised Statutes, 1933, chapter 23, paragraphs 103a *et seq.*, which provided for the use of the grounds and buildings at Chester, occupied by the Illinois Asylum for Insane Criminals, to be used for the Illinois Security Hospital. The psychiatric division of the Illinois State Penitentiary was established under the provisions of chapter 108, paragraph 106, Smith-Hurd Illinois Revised Statutes 1933, and paragraph 111(d) made provision for persons such as petitioner to be confined in the psychiatric division of the penitentiary. The act also provided that the psychiatric division should be "physically separated" from the penitentiary proper. (Smith-Hurd Stat. 1933, chap. 108, par. 114.) In accordance with the provision of the statute petitioner was transferred to the psychiatric division.

It is the contention of the petitioner that respondent has no authority to detain him because, under the authority of the case of *People ex rel. Lowe* v. *Ragen,* 387 Ill. 131, the Penitentiary Act of 1933 was not retroactive, and therefore did not apply to the petitioner and the petitioner was

wrongfully transferred. He contends that under the authority of the case of *People ex rel. Kerner,* v. *McKinley,* 371 Ill. 190, his transfer to the psychiatric division was illegal, having been made under the provisions of the act of 1933 which did not apply to petitioner. We held in the *McKinley case* that the statute of 1933 was not retroactive and that the transfer from the reformatory to the penitentiary would have to be made in accordance with the provisions of section 11 of the Parole Act, which section was in effect at the time of the sentence and conviction of the defendant, and that the authorities had no right to transfer the prisoner without a hearing in accordance with the provisions of section 11 of the Parole Act, because the transfer from the reformatory is a more severe sentence.

The instant case differentiates in that the severity has not been increased and petitioner has not been injured thereby. The length of commitment has not been increased by the transfer from the Illinois Asylum of Insane Criminals to the psychiatric division of the penitentiary in accordance with the act of 1933.

We held in the case of *People ex rel. Ross* v. *Ragen,* 392 Ill. 465, where a prisoner had been transferred from Joliet to Menard and back to Joliet, the point of his original confinement, he was not entitled to release merely because the transfer to Menard had not been made in accordance with the provisions of the statute.

We do not find, from an examination of the record here, that the petitioner is entitled to discharge on a writ of *habeas corpus.* For that reason the writ is quashed, petition dismissed and the petitioner is remanded to the custody of the warden.

*Petitioner remanded.*