**UNITED STATES of America, ex rel. Tony MARINO, Petitioner-Appellant,**

v.

**Ralph H. HOLTON, District Director, Immigration and Naturalization Service, Chicago, Illinois, Respondent-Appellee.**

**No. 11483.**

United States Court of Appeals
Seventh Circuit.

Dec. 6, 1955.

Rehearing Denied Jan. 5, 1956.

Irving Goodman, Nathan B. Engelstein, Chicago, Ill., Emil M. Caliendo, Chicago, Ill., for appellant.

Robert Tieken, U. S. Atty., Anna R. Lavin, Asst. U. S. Atty., Chicago, Ill., John Peter Lulinski, Asst. U. S. Atty., Chicago, Ill., of counsel, for appellee.

Before MAJOR, LINDLEY and SCHNACKENBERG, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

The district court dismissed a writ of habeas corpus which it had issued on the petition of Tony Marino, and remanded him to the custody of respondent's predecessor, District Director of the Immigra-

tion and Naturalization Service of the United States, who had custody of petitioner when the writ was issued, under a warrant for his deportation to Italy from whence he had emigrated to the United States in 1923. The warrant was issued March 2, 1926 on a charge, *inter alia,* that he had been sentenced to imprisonment for a term of one year or more because of conviction in the United States of a crime involving moral turpitude, to wit: murder, committed within five years after his entry [1]. From the district court's order Marino appeals to this court.

Marino's said petition for writ of habeas corpus, filed May 15, 1951, alleged that a judgment of conviction was entered in the Circuit Court of Winnebago County, Illinois, on April 30, 1925, and he was on that day sentenced to life imprisonment and delivered to the warden of the Illinois State Penitentiary; that about 25 years later he filed in said court a petition for habeas corpus, "but was denied relief;" that he thereafter "obtained certiorari from the Supreme Court of the United States" and that "The Attorney General of the State of Illinois confessed error," as a result of which the judgment of the trial court in the habeas corpus case was "vacated and the cause was remanded" [2].

The petition set forth that it appears from the opinions in the latter case that "the murder conviction * * * was void, for the reason that your petitioner was denied due process of law which the Fourteenth Amendment requires." Specifically petitioner averred that he "had no attorney at the trial," and:

"Although the common law record recites that petitioner was arraigned in open court and advised through interpreters of the meaning and effect of a plea of guilty and that petitioner signed a statement waiving

---

1. The statute in effect in 1923 to June 27, 1952 inclusive was 39 U.S.Stat. at Large, 889. The statute in effect June 27, 1952 to and including the present time is 8 U.S.C.A. § 1251 [see paragraph (a) (4)].

2. Marino v. Ragen, 332 U.S. 561, 68 S. Ct. 240, 92 L.Ed. 170.

trial by jury, the Attorney General of Illinois admitted and the Supreme Court found, that the waiver was not in fact signed by your petitioner. No plea of guilty was entered at the trial. Your petitioner was 18 years old at the time and had been in this country only two years. Your petitioner did not understand English or court procedure. The arresting officer served as an interpreter for petitioner at the trial."

Petitioner further alleged that "upon remand to the trial court the judge again denied relief," and that petitioner again asked the Supreme Court to grant certiorari, but his petition was denied.[3] Petitioner also averred that on July 8, 1950 he was granted a parole,[4] at which time he was turned over to the immigration authorities.

Respondent's predecessor as district director filed a return to the writ of habeas corpus, setting forth that the warrant of deportation was issued following a hearing accorded to petitioner. Following the issuance of the writ, and with the consent of the district court, a new administrative hearing was granted to petitioner for the purpose of bringing the record up to date. At this hearing on August 21, 1951, petitioner was represented by his counsel. As a result thereof the immigration hearing officer decided that "in view of the fact that the Petitioner's conviction of the crime of murder still stands, he is subject to deportation on the charge." Accordingly, the assistant commissioner entered an order for deportation which, as later amended, was affirmed by the Board of Immigration Appeals on August 29, 1952, and on October 10, 1952 a warrant of deportation was issued.

The return also includes a transcript of the hearing of August 21, 1951, including a stipulation by Marino and his attorney, and the examining officer, qualifying the admission of records pertaining to Marino's conviction. These documents include the common law record, showing a filing on April 21, 1925, in court before Judge Earl D. Reynolds of an indictment of Marino by the Winnebago County grand jury on April 17, 1925, charging him with the murder by shooting of Charles E. Patterson; that on April 21, 1925 he was furnished with a copy of the indictment and lists of witnesses and jurors, and remanded to custody of the sheriff for plea; his appearance in open court on April 23, 1925, when the court explained "fully to said Defendant through interpreters, * *, the meaning and effect of a plea of guilty and the punishment which the Court can render in a case of this character." The court record proceeds as follows:

"After such explanation, said Defendant, Tony Marino alias Toni Marino, files a written waiver of a trial by jury to the charge in the indictment.

"And now said Defendant is remanded by the Court to the custody of the Sheriff for hearing of evidence as to mitigating circumstances before passing a sentence."

Included in the record of the same date is a typewritten paper purporting to bear Marino's signature and reading as follows:

"And now comes the above named defendant, in his own proper person, and waives trial by jury in the above entitled cause, and enters a plea of guilty, and requests the above named judge of the Circuit Court, or such judge of the Circuit Court as may be called upon to hear the above entitled cause upon a change of venue

3. Marino v. Ragen, 336 U.S. 969, 69 S. Ct. 929, 93 L.Ed. 1120. He stated "no reasons were given for this denial, but your petitioner assumes that it was because of the creation of a new remedy by the State of Illinois for prisoners."

4. On August 4, 1949, Illinois' new Post-conviction act took effect. Section 826 et seq., Ch. 38, Ill.Rev.Stat.1953.

from above named Judge of the Circuit Court, if one should be granted, to try said cause without the intervention of a jury."

The record further shows that on April 24, 1925 the

"Court on own motion hears evidence as to the mitigating circumstances before passing sentence upon the plea of guilty of said Defendant.

"And after having heard said testimony the Court takes the matter under advisement, and said Defendant is remanded to the custody of the Sheriff for sentence."

The record also shows that on April 25, 1925 Marino, who, the court found, was 20 years of age, was sentenced to the penitentiary for the term of his natural life.

The documents admitted by stipulation include the record of a habeas corpus proceeding filed by Marino in the Circuit Court of Winnebago County, on January 6, 1947. His petition alleged that he was "not given any papers of any kind" at the hearing before Judge Reynolds on April 21, 1925, that "no one spoke to him or asked him any questions at this hearing," that he did not on April 23, 1925 sign a jury waiver, that "the record shows [4a] that petitioner did not enter a plea of guilty" and that "he was not warned of the consequences" thereof, that "he did not persist in the plea of guilty," that the court "used biased interpreters to translate the proceedings in this case to petitioner and the trial court," and used interpreters on April 23, 1925 only, that the court "did not appoint counsel to represent petitioner," and that "petitioner was without the advice of counsel from the date of his arrest until he entered this prison."

The same petition also sets forth "that the record does not show" that "the alleged plea of guilty * * * was received and recorded, as required by law," that the trial court informed him of "his constitutional right to have a jury trial," or that the trial court informed him of "his constitutional right to enjoy the assistance of counsel." It further alleges that petitioner "did not competently, intelligently, or understandingly waive a jury trial or enter a plea of guilty to the indictment in this cause, that in fact there was no waiver of a jury trial or a plea of guilty entered in this cause by petitioner," that petitioner "was denied a fair and impartial trial," and that "the judgment * * * is absolutely void."

The documents admitted by stipulation also include a transcript of certain proceedings before Judge Dusher of the Circuit Court of Winnebago County following the filing in that court on January 26, 1948 of the mandate in Marino v. Ragen, 332 U.S. 561, 68 S.Ct. 240.[5] These proceedings show that Judge Dusher construed the mandate to mean that the court "should have a full and complete hearing of what transpired" in the murder case and "determine whether or not the petitioner received a fair trial * * *, or if he was deprived of any of his constitutional rights." He heard evidence and considered the common law record and also the trial judge's docket. He found by "a clear preponderance of the evidence, even beyond any reasonable doubt," that Marino did sign "this jury waiver; that he was advised of its contents and in it there is a plea of guilty; that Marino

---

4a. Italics on this page are furnished for emphasis.

5. On February 16, 1948 the attorney general of Illinois made a motion in the circuit court that it enter an order in accordance with the mandate, contending that the court should have then discharged Marino from custody. The motion was denied. The attorney general thereupon filed in the United States Supreme Court a motion "for such order as shall plainly direct the action of the Circuit Court in obedience to this Court's mandate in this case." The Supreme Court denied this motion. 333 U.S. 852, 68 S.Ct. 729, 92 L.Ed. 1133.

testified falsely when he said he did not sign this waiver of jury." He further found that the "common law record together with the judge's docket [6] shows that a plea of guilty was entered and that Marino was advised of his statutory and constitutional rights."

As to Marino's representation by counsel, the court found that within a day after Marino's arrest his friends retained for him attorney Harry B. North, one of the best and most prominent lawyers in the northern part of Illinois, who on February 28, 1925 spent two and one-half hours with Marino. Before Judge Dusher, Marino denied that he ever saw North. Judge Dusher declared Marino's testimony on this point to be a falsehood. Another witness, Manilli, testified that he was present at that time and acted as an interpreter between attorney North and Marino. The court also found from the evidence that on March 2, 1925, the same attorney spent two hours with Manilli and Marino. As to what was said between Marino and his counsel on these occasions, the court, because of the privileged character of the communications, did not interrogate the witnesses, stating that "the petitioner didn't want it gone into." He respected the privilege of nondisclosure of what actually transpired between North and his client. The court further found that the evidence showed "without any question that North remained under the retainer that had been paid to him until the day that Marino had his hearing on mitigation and aggravation," that it is undisputed, and petitioner did not deny, that before that hearing Marino said that he did not want a lawyer and that he wanted to plead guilty and throw himself upon the mercy of the court.

Judge Dusher after hearing the evidence was of the opinion that Marino had the benefit and advice of counsel.

As to the credibility of Marino as a witness, the court pointed out that Marino said "last Saturday, that he didn't shoot Patterson." While appearing before the parole board, he stated that he shot Patterson three times, but in April 1947 he told the examining officer of the Illinois Division of Correction that he "didn't remember." [7]

Judge Dusher quoted from a letter which Marino wrote to the state's attorney of Winnebago County in which he said that he "was sentenced to life imprisonment because I had no one in this country who could honestly advise me what to do with the court's proceedings, * * *." The evidence before Judge Dusher showed that on the second day he was in the county jail there were numerous "Italian" persons who called on him, and that at the time of his confession Mr. Corado, manager of the telephone company, a young man named Greely, Joe Marino, Manilli, and another man, were all present.

The court came to the conclusion "as a matter of fact, that Marino did have the benefit of the advice of counsel, * * * his friends putting up their money for the purpose of hiring a lawyer." Judge Dusher found that Judge Reynolds "was zealous to protect the rights of this defendant," and that there was "a hearing on mitigation and aggravation" which constituted 66 pages of testimony taken before the court. The court concluded as a matter of fact that Marino "was fully advised at the time he made the confession" and that "he knew absolutely all of his rights and that he

6. Judge Reynolds made the following entry in his docket:
"April 23, 1925.
"Defendant in Court in person. Court explains fully to said defendant thru interpreters Daniel Torrisi & Joe Marino meaning & effect of entry of plea of guilty & punishment Court can render in a case of this character. After such explanation, defendant files written waiver of trial by jury & enters plea of guilty to charge in the indictment."

7. Before the immigration hearing officer, on August 21, 1951, he testified that he met an unknown man on the streets of Rockford, who spoke to him, and he thought that the man was going to kill him, "so I pulled my pistol and killed him. * * * I never saw him before."

did just exactly what he said he wanted to do—he wanted to plead guilty and put himself on the mercy of the court." Judge Dusher was of the opinion that when

> "defendant appears before the court with his lawyer, that it is presumed by the court that his lawyer has explained to him all of his rights under the law and under the constitution. The actual appearance in court with a lawyer is in large measure a formality after the lawyer has advised the defendant concerning his rights. It seems to me that the vital thing is whether or not a defendant has had the advice of counsel previous to a plea of guilty. It does not seem to me that it is vital to the rights of the defendant that his lawyer actually stand with him in court before the judge at the time a plea of guilty is entered or at the time of sentence on a plea of guilty."

The court concluded that "there is no question in my mind but what Marino had been fully advised of his rights, under the law and under the constitution, by Mr. North and that when he stood before the trial judge in the murder case he had been fully advised and had the benefit of the advice of counsel at the time he plead guilty."

The court thereupon quashed the writ of habeas corpus.

To review this action, Marino filed a petition for certiorari in the Supreme Court of the United States, which was denied on May 2, 1949. 336 U.S. 969, 69 S.Ct. 929, 93 L.Ed. 1120. Justices Douglas, Murphy and Rutledge were of the opinion that certiorari should have been granted. They are the same justices who joined in a concurring opinion in Marino v. Ragen, 332 U.S. 561, 68 S.Ct. 240, 92 L.Ed. 170.

Marino's said 1947 petition for habeas corpus filed in the Circuit Court of Winnebago County charged that, during the proceedings in that court on the murder indictment in 1925, he was deprived of certain constitutional rights. Certiorari to review the action of the circuit court adverse to Marino brought the petition before the United States Supreme Court, where a confession of error by the Illinois attorney general was filed stating facts appearing on the common law record of the murder proceeding and also *aliunde* that record [8]. The opinion of the Supreme Court [9] indicates that, on the facts admitted on the record then before

8. We have supplied the italics wherever the word "appears" is set forth in this footnote.

Referring to Marino, the confession of error stated "No attorney *appears* to have been appointed for him on April 24." The confession of error also stated that at the hearing of March 5, 1947, by the Circuit Court on petitioner's petition for habeas corpus, "the following additional facts * * * were adduced * * *:

"No plea of guilty ever *appears* to have been entered before the trial court in petitioner's trial and it *appears* that the waiver on record purportedly signed by the petitioner was, in fact, not signed by him.

"Further, it *appears* that the petitioner was only eighteen years old at the time of his original trial, that he had entered the United States from Italy, his native land, only two years prior to his trial and that at the time of his trial he did not understand the English language and it is doubtful that he understood American trial court procedure.

"Finally, it *appears* that Daniel Torrisi, the person who appeared as interpreter for the petitioner at his original trial, was in fact the police officer who arrested the petitioner.

"Torrisi testified at the *habeas corpus* hearing and alleged that there was another interpreter by the name of Joseph Carrado, who explained to the petitioner his rights. However, the record fails to disclose Carrado as an interpreter."

The document filed by the attorney general was not under oath and was not accompanied by any affidavits, depositions or transcript of proceedings, and probably was not required to be, as a matter of procedure.

9. Marino v. Ragen, 332 U.S. 561, 68 S.Ct. 240.

it, Marino was entitled to relief. Whether the charges of violations of his constitutional rights were well founded as a matter of fact did, however, remain undetermined. The Supreme Court vacated the circuit court's judgment quashing the writ, and remanded the case to that court.

Following the remandment the circuit court reopened the case and heard evidence, as above related. It does not appear that the attorney general offered any evidence. He did attempt to prevent the hearing by making a motion that the court enter an order, in effect, discharging Marino. When that motion was denied, he moved the United States Supreme Court to, in effect, direct Judge Dusher to do so. The Supreme Court denied that motion. Judge Dusher proceeded with the hearing. The record filed by Marino before us contains Judge Dusher's opinion embracing his findings of fact and conclusions of law, although the record fails to include a transcript of the testimony taken. It is apparent from Judge Dusher's findings that he not only considered the common law record and the judge's docket covering the murder case, but also heard various witnesses, including attorney North. Because Judge Dusher felt that the conversations between Marino and attorney North were privileged and because Marino did not want North to testify in regard thereto, Judge Dusher did not require North to do so.

The verified allegations of Marino in his petition for habeas corpus are to the effect that he did not sign the waiver of trial by jury, that the arresting officer served as an interpreter for petitioner "at the trial," that he was not given any papers of any kind, that he was not warned of the consequences of the plea of guilty, that the court used biased interpreters, that he was without the advice of counsel from the date of his arrest until he entered prison and that he did not competently, intelligently, or understandingly enter a plea of guilty and

that for these reasons he was denied a fair and impartial trial. In view of these allegations, the court was required to test the credibility of Marino, in the light of contrary facts appearing in the court's common law record, the judge's docket and the testimony of witnesses. Finding that Marino had on various occasions given radically different versions as to the killing for which he was indicted, the court came to the conclusions that he was not a credible person and that his aforesaid allegations were false.

1. In this court Marino's counsel state their argument as follows:

"Where the Attorney General of the State of Illinois has confessed error and admitted that a person convicted of a crime 'was denied the due process of law which the Fourteenth Amendment requires' and the Supreme Court of the United States has so found, such finding is *res adjudicata* and binding on the lower Court, and the person is entitled to a trial *de novo* and not to a hearing as to whether the Supreme Court finding is correct."

The decision in Marino v. Ragen, 332 U.S. 561, 68 S.Ct. 240, was based upon the attorney general's confession of error which admitted allegations of facts and "consented" to a reversal of the judgment below. Viewed in light of the confession of error and the statements of facts which were undisputed in the Supreme Court proceeding, that court concluded that Marino was denied the due process of law which the Fourteenth Amendment requires. It did not however reverse the judgment below, but vacated that judgment and remanded the case. It was in the circuit court that evidence was thereafter taken, the facts judicially ascertained and a new judgment entered holding against Marino's contentions. The Supreme Court refused to review that judgment [10].

The confession of error served its purpose, but its effect was not all-inclu-

---

10. Marino v. Ragen, 336 U.S. 969, 69 S.Ct. 929.

sive or conclusive as Marino's counsel now contend. The function of the court when such a confession of error is presented in a criminal case is clearly set forth in Young v. United States, 315 U.S. 257, at page 258, 62 S.Ct. 510, at page 511, 86 L.Ed. 832, where the court said:

"The Government confessed error and we brought the case here. 314 U.S. 595, 62 S.Ct. 59, 86 L.Ed. 480.

"The public trust reposed in the law enforcement officers of the Government requires that they be quick to confess error when, in their opinion, a miscarriage of justice may result from their remaining silent. But such a confession does not relieve this Court of the performance of the judicial function. The considered judgment of the law enforcement officers that reversible error has been committed is entitled to great weight, but our judicial obligations compel us to examine independently the errors confessed. See Parlton v. United States, 64 App. D.C. 169, 75 F.2d 772. The public interest that a result be reached which promotes a well-ordered society is foremost in every criminal proceeding. That interest is entrusted to our consideration and protection as well as that of the enforcing officers. Furthermore, our judgments are precedents, and the proper administration of the criminal law cannot be left merely to the stipulation of parties. Cf. Rex v. Wilkes, 4 Burr. 2527, 2551, 98 Eng. Rep. 327; State v. Green, 167 Wash. 266, 9 P.2d 62."

■ The public interest in the Marino case was entrusted to the consideration and protection of the United States Supreme Court as well as to the Illinois attorney general. In the performance of its duty in that regard that court vacated the judgment in habeas corpus and remanded the case to the circuit court, which then proceeded to ascertain the controlling *facts*. Even if the attorney general's confession of error had positively asserted facts, rather than merely setting out what the facts "appeared" to be, the result would have been the same. The method of determining the real facts remained under the control of the Supreme Court. Inasmuch as the attorney general suggested that the United States Supreme Court reverse the judgment of the Winnebago County Circuit Court in the habeas corpus proceeding, we interpret the action of the Supreme Court in vacating the circuit court judgment and remanding the cause to mean that that court was not then making a final decision, but anticipated further proceedings during which the controlling facts would be determined by the circuit court [11].

■ 2. Congress [12] has expanded the rights of a petitioner for habeas corpus. Johnson v. Zerbst, 304 U.S. 458, at page 466, 58 S.Ct. 1019, 82 L.Ed. 1461, citing Frank v. Mangum, 237 U.S. 309, 35 S.Ct. 582, 59 L.Ed. 969. In the latter case the court said, 237 U.S. at page 329, 35 S.Ct. at page 588:

"It is objected by counsel for appellee that the alleged loss of jurisdiction cannot be shown by evidence outside of the record; that where a prisoner is held under a judgment of conviction passed by a court having jurisdiction of the subject-matter, and the indictment against him states the case and is based upon a valid existing law, *habeas corpus* is not an available remedy, save for

11. White v. Ragen, 1945, 324 U.S. 760, 65 S.Ct. 978, 89 L.Ed. 1348; Woods v. Nierstheimer, 1946, 328 U.S. 211, 66 S.Ct. 996, 90 L.Ed. 1177; Carter v. Illinois, 1946, 329 U.S. 173, 67 S.Ct. 216, 91 L.Ed. 172; Foster v. Illinois, 1947, 332 U.S. 134, 67 S.Ct. 1716, 91 L.Ed. 1955; Marino v. Ragen, 1947, 332 U.S. 561, 68 S.Ct. 240; Loftus v. Illinois, 1948, 334 U.S. 804, 68 S.Ct. 1212, 92 L.Ed. 1737; Id., 1949, 337 U.S. 935, 69 S.Ct. 1511, 93 L.Ed. 1741; Young v. Ragen, 1949, 337 U.S. 235, 69 S.Ct. 1073, 93 L.Ed. 1333; Jennings v. Illinois, 1951, 342 U.S. 104, 72 S.Ct. 123, 96 L.Ed. 119.

12. 28 U.S.C.A. § 2243.

want of jurisdiction appearing upon the face of the record of the court wherein he was convicted."

The court then points out that the statute [13] changed the common law, adding:

"The effect is to substitute for the bare legal review that seems to have been the limit of judicial authority under the common-law practice, and under the act of 31 Car. II, chap. 2, a more searching investigation, * * * and the court, upon determining the actual facts, is to 'dispose of the party as law and justice require.'

" * * * it results that under the sections cited a prisoner in custody pursuant to the final judgment of a state court of criminal jurisdiction may have a judicial inquiry in a court of the United States into the very truth and substance of the causes of his detention, although it may become necessary to look behind and beyond the record of his conviction to a sufficient extent to test the jurisdiction of the state court to proceed to judgment against him." [14]

Guided by these principles we now consider the case before us.

■ 3. While Marino's plea of guilty does not appear upon the common law record kept by the clerk of the court, it does appear in the trial judge's docket. That is sufficient. In People ex rel. Forsythe v. Nierstheimer, 396 Ill. 193, at page 197, 71 N.E.2d 62, at page 63, the court said:

"It is true that a part of the judgment as entered by the clerk does not truly reflect what is shown by the judge's minutes; however, the entire record will be searched and interpreted and a deficiency in one place will be cured by what appears in another. People v. Woodward, 394 Ill. 433, 69 N.E.2d 181; People

ex rel. Ewald v. Montgomery, 377 Ill. 241, 36 N.E.2d 343. The sentence was in accordance with the provisions of the existing statute, (Smith-Hurd Stat.1929, chap. 23, pars. 94 and 99), and the judge's minutes clearly show that this was the judgment of the court."

In that case certiorari was denied by the United States Supreme Court, Forsythe v. Nierstheimer, 330 U.S. 841, 67 S.Ct. 981, 91 L.Ed. 1287.

4. The common law record and the judge's docket dispute Marino's contentions that he was not given a copy of the indictment and a list of witnesses, that he was not warned of the consequences of a plea of guilty and that he did not understandingly enter such plea. From the evidence which Judge Dusher heard, he found in effect that these records state the truth.

5. The allegation in Marino's petition that the court did not appoint counsel to represent him is true, but his statement that he was without the advice of counsel from the date of his arrest until he entered prison, Judge Dusher found, as a matter of fact, to be false. He found from the evidence heard before him that a day after Marino's arrest the latter's friends hired attorney North to represent him and that on at least two occasions prolonged conferences between Mr. North and Marino occurred. He found that the attorney's retainer continued until the sentencing of Marino. Judge Dusher described Mr. North as one of the best and most prominent lawyers in the northern part of Illinois. Marino's objection kept from the record the substance of his conversations with his attorney. Whatever those conversations were, the record does not show that the attorney appeared personally in court during subsequent proceedings culminating in the sentence.

■ The sixth amendment of the federal constitution says nothing about

13. 28 U.S.C.A. § 2243.

14. A review of the cases on this point may be found in Hawk v. Olson, 326 U.S.

271, at page 274, 66 S.Ct. 116, 90 L.Ed. 61.

an actual court appearance of counsel. It says that "in all criminal prosecutions, the accused shall enjoy the right * * * to have the assistance of counsel for his defense." While it is customary for counsel for a defendant in a criminal case to appear in court, his appearance there merely indicates that he believes that he will thus further the interests of his client. Such appearance is not constitutionally indispensable. If competent, retained counsel, assisting defendant, believes that a plea of guilty should be entered and sentence imposed in the manner in which it occurred in this case, there is no infringement of defendant's rights under the sixth or fourteenth amendments of the federal constitution. As the court said in Amrine v. Tines, 10 Cir., 131 F.2d 827, at page 833:

> "Due process of law, as we comprehend it, does not necessarily include or exclude representation by counsel. *The substance of due process may be denied although the accused is represented by a coterie of counsel,*" [15] "yet he may have it although unaccompanied by counsel.[16] Due process, or the lack of it, is based upon substance and not form. Powell v. Alabama, supra [287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158]; Norris v. State of Alabama, 294 U.S. 587, 590, 55 S.Ct. 579, 79 L.Ed. 1074; Avery v. State of Alabama, 308 U.S. 444, 60 S.Ct. 321, 84 L.Ed. 377; Chambers v. State of Florida, 309 U.S. 227, 60 S.Ct. 472, 84 L.Ed. 716. Lisenba v. People of State of California, 314 U.S. 219, 236, 62 S.Ct. 326, 86 L.Ed. 166. In any event, the right to assistance of counsel is a personal right and may be waived, and if the accused is otherwise accorded a fair trial which embraces an opportunity to be heard,

after due notice, he cannot complain of the failure to have counsel for his defense. Johnson v. Zerbst, supra."

We are mindful that, according to Judge Dusher's finding based upon the evidence which he heard, Marino stated in open court that he did not want a lawyer and that he wanted to plead guilty and throw himself upon the mercy of the court. In view of what undoubtedly was attorney North's appraisal of the entire situation, we have no right to say that Marino was acting without the advice and assistance of North, even though North was not then present in court. It may well have been that North, in considering the heinousness [17] of the crime with which his client was charged, believed that the entry of a not guilty plea followed by a trial would result in a more severe punishment than what might be expected from a judge on a plea of guilty and a submission by the defendant personally to the mercy of the court. The sentence which was actually imposed on the plea of guilty tends to justify the attorney's judgment. It is well known to lawyers and judges in Illinois that juries are apt to inflict the death penalty or imprisonment for a long term of years for an offense where a young gunman meets an aged person, a stranger to him, on a public street, and without any apparent provocation shoots him to death. It is also known that under Illinois law a murderer who escapes the death penalty and receives a life sentence is eligible to parole in 20 years, while one who receives a sentence for a long term, such as 99, 150, 199 years, etc., is not subject to parole until he has served one-third of the term of the sentence [18]. Under the sentence of life imprisonment which Marino received he was eligible for parole in 20 years. He actually has been paroled for the last five years.

---

15. As in Powell v. Alabama, 287 U.S. 45, at page 49, 53 S.Ct. 55, 77 L.Ed. 158.

16. These italics we have supplied.

17. It appears from Marino's petition for certiorari that his victim was 77 years old. Marino's petition for habeas corpus filed in the Circuit Court of Winnebago County indicates that the victim was caretaker of a G. A. R. building.

18. Section 795, Ch. 38, Ill.Rev.Stat.1923.

■ We cannot say that Judge Dusher was wrong in finding that Marino had the assistance of counsel. The counsel was selected and hired by Marino's friends and no charge has been made that he was incompetent or unfaithful. Moreover, from Marino's mouth in open court came the expression of his desire that he then did not want a lawyer and that he wished to throw himself upon the mercy of the court. No constitutional right was violated when he was permitted so to do. His constitutional right to the assistance of counsel was not violated. Marino had the assistance of competent counsel. On the record before us and in view of Judge Dusher's findings we are unable to hold that Marino acted without understanding, incompetently or unintelligently in the proceedings which led to his sentencing.

We are aware of such cases as Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461. In that case the defendant was arrested on November 21, 1934, indicted January 21, 1935, and on January 23, 1935 given notice of the indictment, arraigned, tried, convicted, sentenced all on one day, and lodged in the federal penitentiary on January 25, 1935, during all of which time he was unable to employ counsel for the trial. His plea was not guilty, and at all times he was without the assistance of counsel. Obviously, the case before us is fundamentally different, because not only was there no speedy disposition of this case but as a matter of fact Marino had the assistance of counsel.

■ 6. Because the matter was not presented in this court, we might well ignore the charge in Marino's habeas corpus petition filed in the Circuit Court of Winnebago County on January 6, 1947 that "the record shows that * * * he did not persist in the plea of guilty." However, even if it were pressed upon us, the point is without merit because there is no showing in the record that he did not persist in said plea. Actually, the record shows no change of intention

by Marino in regard to his desire to plead guilty but rather that such a plea was properly entered. In any event, if the record did show that he did not persist in his plea of guilty, that fact would be a basis for alleging error under the state law only [19]. No federal constitutional question is thereby raised.

■ 7. It is urged that the Circuit Court of Winnebago County "used biased interpreters" in Marino's proceedings. The record shows that the court used as interpreters Daniel Torrisi and Joe Marino. Marino has at no time contended that Joe Marino was not a competent interpreter. His sole charge against him is a statement in the petition for habeas corpus that Joe Marino was a friend of Daniel Torrisi, one of the arresting officers, was not a relative or a friend of Marino and was not known to him. On the other hand, from the evidence adduced Judge Dusher ascertained that another interpreter, Manilli, served in that capacity when Marino conferred with attorney North, and also at the time of Marino's confession. There were also present at the time of Marino's confession four or five "Italians," including Joe Marino, Manilli and manager Corado of the telephone company. There is no specific charge or any evidence that any questions or explanations by the court, the state's attorney, or any other person, were on any occasion improperly translated to Marino or that any statement by Marino was improperly translated, even if it be assumed that Torrisi, the arresting officer, or Joe Marino should not have acted as interpreters. In the absence of such charge or evidence we have no right to base upon mere conjecture an inference that both of these men violated their duties as fair interpreters. We do have a right to assume that the presiding judge who permitted them to testify exercised sound discretion in that regard and was justified in relying upon their services. The presumption that a presiding judge is conscious of what transpires in his

19. Section 756, Ch. 38, Ill.Rev.Stat.1923.

presence and that he has a conscientious desire to administer justice faithfully is not to be so lightly brushed aside. There is no Illinois statute governing the selection of interpreters in criminal trials. Certainly Joe Marino was not *ipso facto* disqualified because he was not a relative or friend of the Tony Marino or known to him. If he had been it would tend to show his *lack* of impartiality.

Moreover, it appears from the confession of error of the attorney general that there was evidence before Judge Dusher that "there was another interpreter by the name of Joseph Carrado, who explained to the petitioner his rights. However, the record fails to disclose Carrado as an interpreter." Under the rule of *idem sonans*, it is reasonable to infer that Mr. Corado, the telephone company manager, heretofore referred to as one of the persons who interested themselves in Marino, was the "Carrado" to whom the attorney general referred. There is no requirement that the record should disclose him as an interpreter. If he did so act, it is an additional circumstance indicating that in the court proceedings Marino's rights were not infringed. Obviously, he was friendly to Marino. There is no contention that his translated explanation to Marino of his rights was incorrect.

For these reasons the judgment of the district court is

Affirmed.

MAJOR, Circuit Judge (dissenting).

I regret I cannot give my assent even though the opinion evidences much thought and labor. The Supreme Court, in Marino v. Ragen, 332 U.S. 561, 562, 68 S.Ct. 240, 241, 92 L.Ed. 170, made the following decision, "In the light of the confession of error [citing cases] and the undisputed facts, we conclude that petitioner was denied the due process of law which the Fourteenth Amendment requires." The decision related to Marino's conviction in 1925, in the Circuit Court of Winnebago County, Illinois, on a charge of murder. The inescapable effect of that decision was to void such judgment of conviction and to render it of no more force and effect than if it had been entered in the nighttime by the janitor of the county courthouse. It followed as an inevitable result that the process by which Marino was confined in prison was also void.

The argument based upon cases such as Young v. United States, 315 U.S. 257, 62 S.Ct. 510, 86 L.Ed. 832, that the Supreme Court is not obligated to recognize a confession of error by law enforcement officials misses the point because in the instant case the court accepted such confession, relied upon it and rendered a decision on the issue as to whether Marino had been deprived of his constitutional rights. Of course, the Supreme Court and no other court is bound to render a decision on a confession of error or upon an agreement or stipulation of the parties, but when it does so its decision, so far as I am aware, carries no less weight than if it had been made on a complete record.

By the decision of the Supreme Court every vestige of the original proceeding in the state court was nullified, other than the indictment containing the charge. And by the Supreme Court mandate the state court had no alternative but to enter an order of discharge. Of course, at that time the State, if it so desired, could have taken Marino into custody and caused him to submit to another trial on the pending charge. In place of discharging Marino, however, the state court, without power or authority, proceeded to a hearing on the exact issue which had been decided favorably to Marino by the Supreme Court, that is, whether there had been a deprivation of his constitutional rights, and rendered a decision contrary to that of the Supreme Court.

This unprecedented performance took place under the pretext that the court did not understand the mandate issued by the Supreme Court. Whatever infirmities might have resided in the mandate, it is hornbook law that a mandate must be construed in connection with the opinion or decision of the court of

issuance. With the clear, distinct and direct language employed by the Supreme Court, it bears upon the preposterous to think that any Judge, any lawyer, in fact any layman, could have misunderstood the action called for by the mandate.

Apparently, however, smarting under the castigation administered by one of the members of the Supreme Court, the state court refused to execute the mandate. The action by that court which followed demonstrates not only a callous indifference to the decision of the Supreme Court but constitutes a scathing indictment of the honesty, integrity and good faith of the highest prosecuting official of the State. To the credit of the Illinois Attorney General, however, it should be noted that he, with courage and deference to the decision of the highest tribunal in the land, made a valiant effort to persuade the state court to follow and execute the mandate. No subterfuge was employed by that official as a pretext to do otherwise. As might be expected, he understood the decision of the Supreme Court, its mandate and what it called for.

The Attorney General, when the State's Attorney of Winnebago County refused to act, filed before the state court a petition requesting that Marino be discharged or granted a new trial. After reciting the facts relative to the conviction of Marino (referred to by the Attorney General as the petitioner), that official stated:

"Upon these undisputed facts, the Supreme Court of the United States has declared this petitioner was convicted of murder and sentenced to life imprisonment upon such conviction *in violation of his rights under the Constitution of the United States.*

"In consequence of the premises, it became the duty of Max Weston, State's Attorney of Winnebago County, immediately upon the filing of the mandate aforesaid, to appear before this Court and *move for the entry of a judgment order discharging the petitioner from the custody of the Warden of the Illinois State Penitentiary.* Max A. Weston, State's Attorney, *has failed and refused to do his duty in this regard.*

"The Attorney General of Illinois, on behalf of the People of the State of Illinois, makes this motion, not in the interests of petitioner as an individual, but because he considers that the violation of the Constitutional rights of any person is tantamount to an attack on the rights and freedom of every inhabitant of the State of Illinois.

"Wherefore the People of the State of Illinois, by George F. Barrett, Attorney General of the State of Illinois, moves the Court to enter a judgment order *in accordance with the mandate* of the Supreme Court of the United States in this cause." (Italics supplied.)

Notwithstanding the solemn declaration by the Supreme Court and the courageous position of the Attorney General, the state court, not understanding the mandate, conducted a hearing, decided that Marino had not been deprived of any constitutional right and ordered him returned to prison. It thus reversed the decision of the Supreme Court. In my judgment, the order was entered arbitrarily and without power or authority. Neither it nor the proceeding from which it resulted should be given any consideration by this or any other court or tribunal.

Respondent in his brief, referring to the original judgment, argues, "That conviction remains on the official records of that court a valid and subsisting judgment," and whether it is right or wrong, that it is effective because it remains unreversed. To me, that is an astonishing as well as a spurious argument. The fact is that the parties before the Supreme Court in the instant proceeding were the same as those before the state court at the time of Marino's conviction. namely, the State of Illinois and Marino.

The issue was the same as if it had been raised on appeal. I know of no reason and no law which would justify the nullification of a decision by the Supreme Court rendered under these circumstances.

Stripped of all the window dressing with which this case abounds, there emerges the simple issue as to whether Marino was convicted, in violation of his constitutional rights, of a crime involving moral turpitude, to-wit, murder. That issue has been decided in the affirmative by the Supreme Court of the United States. Such being the case, there never has been a lawful judgment of conviction standing against Marino. It is shocking that the Immigration and Naturalization Service should attempt to utilize such a conviction as a basis for deportation. I think that federal officials should renounce rather than embrace the grievous wrong which has been done Marino by Illinois officials. ...

I would reverse the order, and direct that the writ of habeas corpus be issued and that Marino be discharged.