## JENNINGS *v.* ILLINOIS.

NO. 95.

Argued November 5–6, 1951.—Decided December 3, 1951.

*Nathaniel L. Nathanson,* acting under appointment by the Court, argued the causes and filed briefs for petitioners in all three cases. In No. 95, *Calvin P. Sawyier,* acting under appointment by the Court as associate counsel for petitioner, was with *Mr. Nathanson* on the brief and, by special leave of Court, ⁞ rgued the cause *pro hac vice.*

*William C. Wines,* Assistant Attorney General of Illinois, argued the causes for respondent. With him on the briefs were *Ivan A. Elliott,* Attorney General, and *Raymond S. Sarnow* and *John T. Coburn,* Assistant Attorneys General.

MR. CHIEF JUSTICE VINSON delivered the opinion of the Court.

Each of the three petitioners is confined in an Illinois penitentiary following conviction of serious crimes. Petitioners' factual allegations need not be described, except to note petitioners' specific claims that confessions introduced at their trials were wrung from them by force and violence. Although such allegations set forth a prima facie violation of federal constitutional rights,[1] there has been no determination, either by review of the trial record or by hearing of evidence, as to whether petitioners, in fact, are being imprisoned in violation of their rights under the Constitution.

Prior to the case of *United States ex rel. Bongiorno v. Ragen,* 54 F. Supp. 973, 975–976 (D. C. N. D. Ill. 1944),

---

[1] *Brown* v. *Mississippi,* 297 U. S. 278 (1936).

inmates of Illinois penitentiaries were denied the right of sending papers to the courts. Since that decision, many Illinois prisoners have presented claims of denial of constitutional rights and courts have sought to determine what, if any, is the post-conviction remedy available in Illinois to raise such claims. The problem has been here before. *White* v. *Ragen*, 324 U. S. 760 (1945); *Woods* v. *Nierstheimer*, 328 U. S. 211 (1946); *Carter* v. *Illinois*, 329 U. S. 173 (1946); *Foster* v. *Illinois*, 332 U. S. 134 (1947); *Marino* v. *Ragen*, 332 U. S. 561 (1947); *Loftus* v. *Illinois*, 334 U. S. 804 (1948), 337 U. S. 935 (1949). Finally, in *Young* v. *Ragen*, 337 U. S. 235 (1949), it became apparent that unless habeas corpus was available, the Illinois courts afforded no remedy for the eight prisoners then before the Court, including petitioner Sherman, now here in No. 375. On remand to the Criminal Court of Cook County, that court held that habeas corpus was not an appropriate remedy, a holding that could not be reviewed by the Illinois Supreme Court under state practice.

Meanwhile, the Illinois General Assembly passed the Illinois Post-Conviction Hearing Act [2] to provide a remedy for—

> "[a]ny person imprisoned in the penitentiary who asserts that in the proceedings which resulted in his conviction there was a substantial denial of his rights under the Constitution of the United States or of the State of Illinois or both . . . ."

Under this Act, the court in which conviction took place is authorized to grant relief in a proceeding initiated by the filing of a petition setting forth the respects in which a prisoner's constitutional rights were violated. The State may then answer or move to dismiss the petition and the trial court is authorized to receive oral testimony

---

[2] Ill. Rev. Stat., 1951, c. 38, §§ 826–832.

or documentary proof. A final judgment on a petition filed under the Act is made reviewable in the Illinois Supreme Court on writ of error.[3]

In *People* v. *Dale,* 406 Ill. 238, 92 N. E. 2d 761 (1950), the Illinois Supreme Court sustained the Post-Conviction Hearing Act against attack on Illinois constitutional grounds. The Act was described as providing a new proceeding to afford the required inquiry into the constitutional integrity of a conviction. In the *Dale* case, the court also stated that the Act does not afford a rehearing of issues that had already been finally adjudicated, referring to cases where the Illinois Supreme Court had made such an adjudication.

In the three cases now before the Court, petitioners presented their factual allegations to the trial court in petitions filed under the Post-Conviction Hearing Act. The State's Attorney filed motions to dismiss on grounds of res judicata and failure to state a cause of action and the trial court dismissed each petition without conducting a hearing or otherwise determining the factual issues presented. The Illinois Supreme Court dismissed writ of error in each case without argument and without opinion, entering form orders providing that—

> "after having examined and reviewed the petition and record in the post conviction hearing the same is found to disclose no violation or denial of any substantial constitutional rights of the petitioner under the constitution of the United States or of the constitution of the State of Illinois."

We granted certiorari, 341 U. S. 947, 342 U. S. 811 (1951).

---

[3] In a number of recent cases in which other Illinois procedures were invoked, this Court has denied certiorari with the express statement that denial was without prejudice to petitioners' proceeding under the new Act. *E. g., Walker* v. *Ragen,* 338 U. S. 833 (1949).

The form order entered in these three cases has been entered in each of the twenty-five cases arising under the Post-Conviction Hearing Act that have reached this Court. Certiorari has been denied in many of these cases where petitioners alleged facts which, if true, presented no federal question. In several other cases, the trial court refused to grant the State's motion to dismiss the post-conviction petition. Instead, the trial court obtained a transcript of the petitioner's trial, reviewed the entire record and found that there had been no denial of substantial constitutional rights.[4] However, in the cases now before the Court, the petitions filed in the trial court raised substantial federal claims, petitioners' factual allegations were not denied by the State's Attorney and the courts below have denied relief without inquiring into the verity of the allegations or whether petitioners had waived their claims.

Again in these cases, as in *Young* v. *Ragen, supra,* the Attorney General of Illinois concedes that petitioners have alleged facts showing an infringement of federal rights. Again he agrees that petitioners are or were entitled to a resolution of the factual issues raised. But, again, the Attorney General explains the action of the state court as resting upon an adequate ground of state procedure. Citing certain language in *People* v. *Dale, supra,* he urges that the judgments below mean that the Post-Conviction Hearing Act does not provide an appropriate remedy for consideration of claims which were, or could have been, adjudicated at petitioners' trials.

Petitioners claim that they are held in custody in violation of the Federal Constitution in that coerced confessions were used to obtain their convictions. Where, as

[4] *E. g., People* v. *Supero,* No. 1169, and *People* v. *Gehant,* No. 1146, both cases decided by the Illinois Supreme Court on May 24, 1951. Certiorari was also denied in these cases. 342 U. S. 836, 840 (1951).

here, a federal claim can be raised at the trial, it may be forfeited by failure to make a timely assertion of the claim.[5] And, if a state provides a post-conviction corrective process, that process must be invoked and relief denied before a claim of denial of substantial federal rights may be entertained by a federal court.[6] In inquiring whether any such corrective process was available to petitioners following their conviction, we note that under Illinois practice, writ of error can be used to bring the trial record, including a transcript of the proceedings, before the Illinois Supreme Court for review. However, petitioners could obtain review by writ of error only if a bill of exceptions or the report of proceedings at the trial had been submitted to the trial court within a limited period after conviction.[7] While Illinois provides a transcript without cost to indigent defendants who have been sentenced to death, in the absence of some Illinois procedure to permit other indigent defendants to secure an adequate record petitioners could utilize the writ of error procedure only by purchasing the transcript within the limited period following conviction.[8] Since petitioners in these

[5] See *Yakus* v. *United States,* 321 U. S. 414, 444 (1944), and cases cited therein. As a result of the fact that the transcripts of petitioners' trials are not included in the records in these post-conviction proceedings, note 8, *infra,* it cannot be known at this stage of the proceedings that petitioners waived all of their federal claims at their trials.

[6] See *Frank* v. *Mangum,* 237 U. S. 309, 327 (1915). Petitioners do not allege that any coercion was used to bar objection to the use of the confessions or from having their convictions set aside on review.

[7] Ill. Rev. Stat., 1951, c. 110, § 259.70A. At the time of petitioners' convictions, the period was 50 days, subject to extension on motion filed within that period. Recently, the period was extended to 100 days. Compare Ill. Rev. Stat., 1949, c. 110, § 259.70A.

[8] Ill. Rev. Stat., 1951, c. 37, § 163b; *id.* c. 38, § 769a. Compare 28 U. S. C. (Supp. IV) §§ 1915, 2245, 2250. The transcripts of petitioners' trials have not been made part of the record in their

cases have taken paupers' oaths, the Attorney General of Illinois concedes that writ of error has not been available to review their claims, and we find nothing in this record to justify a different position.[9]  We do not consider here any independent question that might be raised by a state's failure to provide to an indigent defendant the transcript of his trial.  It is sufficient for the purpose of this case that, if writ of error was not available to petitioners and if the Attorney General is correct in stating that the Post-Conviction Hearing Act does not provide an appropriate remedy in this type of case, there never has been, and is not now, any state post-conviction remedy available for determination of petitioners' claims that their federal rights have been infringed.

If their allegations are true and if their claims have not been waived at or after trial, petitioners are held in custody in violation of federal constitutional rights. Petitioners are entitled to their day in court for resolution

---

post-conviction proceedings.  Incomplete excerpts have been purchased, according to petitioners, out of their meager earnings while in prison.  Those excerpts were attached as exhibits to the petitions filed in the trial court.

[9] This does not, of course, foreclose the State from showing that any of the petitioners, in fact, could have obtained review of their claims by writ of error and from determining what, if any, effect such a showing would have on the availability of any other remedy under Illinois law.  The State is also free to require more particularity in the allegations and assertions of these petitioners who have filed their papers *pro se* throughout these proceedings.  *Pyle* v. *Kansas*, 317 U. S. 213, 216 (1942).

In rejecting the suggestion that these writs of certiorari be dismissed, we note that it is at least highly questionable whether, if the judgments below are permitted to stand, petitioners would be permitted to raise again in new proceedings any claims that were or could have been raised in these proceedings.  Ill. Rev. Stat., 1951, c. 38, §§ 828, 832.  See Jenner, The Illinois Post-Conviction Hearing Act, 9 F. R. D. 347, 358, 360 (1949).

of these issues. Where the state does not afford a remedy, a state prisoner may apply for a writ of habeas corpus in the United States District Court to secure protection of his federal rights.[10]

The Attorney General of Illinois asks us to affirm the judgments below as resting upon an independent state ground even though he acknowledges that such action would permit petitioners to proceed in the District Court without more. But we do not lightly assume that a state has failed to provide any post-conviction remedy if a defendant is imprisoned in violation of constitutional rights.[11] Accordingly, we consider it appropriate that the Illinois Supreme Court be permitted to provide definite answers to the questions of state law raised by these cases.

Unlike our action in *Loftus* v. *Illinois, supra,* however, we do not continue these cases on our docket pending further consideration by the Illinois Supreme Court. Instead, we vacate the judgments below and remand the cases to the Illinois Supreme Court for further proceedings. See *Minnesota* v. *National Tea Co.,* 309 U. S. 551 (1940). On remand, petitioners should be advised whether their claims that constitutional rights were infringed at their trials may be determined under the Post-Conviction Hearing Act, or whether that Act does not provide an appropriate state remedy in these cases. If petitioners' claims may be resolved in a proceeding under the Act, either by an inquiry into the verity of their factual allegations or a finding that federal rights were waived during or after their trials, such resolution may

---

[10] 28 U. S. C. (Supp. IV) §§ 2241 (c) (3), 2254; *Hawk* v. *Olson,* 326 U. S. 271, 276 (1945); *House* v. *Mayo,* 324 U. S. 42, 46 (1945); *Ex parte Hawk,* 321 U. S. 114, 118 (1944); *Moore* v. *Dempsey,* 261 U. S. 86 (1923).

[11] *Young* v. *Ragen, supra; Smith* v. *O'Grady,* 312 U. S. 329, 331 (1941).

proceed without further action by this Court. If Illinois does not provide an appropriate remedy for such a determination, petitioners may proceed without more in the United States District Court.

*It is so ordered.*

[For dissenting opinion of MR. JUSTICE MINTON, see *post,* p. 116.]

MR. JUSTICE FRANKFURTER, dissenting.

We all agree, I assume, that we ought not to impute an obstinate flouting of this Court's repeated adjudications to the highest court of a State unless its action precludes any other fair inference. This is more than a mere gesture of courtesy. It goes to the very conception of the relationship of the State courts to this Court in our federal system. Accordingly, just as reasonable legal ground must be attributed to our dispositions without opinion, so explanations rationally consonant with legality must be attributed to the Illinois orders.

One difficulty with the remand of the cases to Illinois is that the explanatory opinion leaves uncertainty regarding the issue on which this Court is asking the Illinois Supreme Court for clarification. The orders under review may rest on one of two legally entertainable grounds: that (a) the Illinois proceedings disclose no infraction of the Fourteenth Amendment, or (b) as a matter of local procedural law, the claim of such infraction was not properly presented.

If we think that a substantial federal claim is raised in these cases, for which a hearing was required but denied, and the denial could only be justified because allowable local procedure was disregarded in the manner in which this federal right was pursued, it would be appropriate, of course, for us to ask the Illinois Supreme Court to tell us explicitly whether these cases went off

on such a non-federal ground, and if so what it is. See *Minnesota* v. *National Tea Co.*, 309 U. S. 551. If this is what the Court means to do, it ought not to be too difficult for the opinion to say so very simply. But to adopt this course, we must be convinced that a federal claim of substance is presented by the record which, but for the legitimate State procedural requirement, is entitled to be heard. We should, then, at least suggest what that claim is.

Alternatively, these Illinois orders may rest, not on a procedurally justifiable refusal to entertain a substantial federal claim, but on the view of the Illinois court that no such substantial federal claim is in issue. If the Court disagrees, it is certainly proper to remand the case to the State court with instructions to accord a hearing to the claim of federal right presented.

But in either case, is it not incumbent on this Court to state without any roundaboutness what the substantial federal question is and how it is properly before us? It seems to me that the formulation of the substantial federal claim, to which the Illinois Supreme Court is said to have been deaf, is the crucial issue in these cases. We would be exactly where we now are if the Illinois Supreme Court were most respectfully to reply to our request for clarification by saying: "Why of course a hearing is required under Illinois law of a substantial claim under the United States Constitution. But in these cases we found no such substantial federal claim." [1]

What is the substantial federal question? Certainly whether a claim which could have been raised by the

---

[1] Indeed, it is difficult to interpret the orders before us for review as saying anything else: "It is further considered by the Court that after having examined and reviewed the petition and record in the post conviction hearing the same is found to disclose no violation or denial of any substantial constitutional rights of the petitioner under the constitution of the United States . . . ."

114

method of direct review of the trial proceedings but was not, must be allowed to be raised in some collateral attack, is not a substantial federal question. Such a requirement cannot be made of the States under the Fourteenth Amendment. It is not enforceable even as to federal prosecutions. *Sunal* v. *Large,* 332 U. S. 174.

Is then the federal claim the denial by Illinois of stenographic minutes of a trial to an indigent defendant? I appreciate that such a denial might be found to be in violation of the Fourteenth Amendment, and more particularly of its Equal Protection Clause, in a State which has a system of criminal appeals. Is this being decided now? And is so far-reaching a general claim decided inferentially, without argument or consideration of all the relevant subsidiary questions that the general proposition would raise? [2]

Or does the Court hold that, in the circumstances of this case, the petitioners are entitled, as a matter of federal right, to an independent inquiry into the constitutional validity of their convictions even though the questions raised were, or could have been, determined at the

---

[2] It is at least relevant to remind that under existing federal habeas corpus procedure, the judge who presided at the trial resulting in conviction may prepare a certificate "setting forth the facts occurring at the trial" for use in the habeas corpus court. 28 U. S. C. § 2245 (I am not unmindful of § 2250 enacted in 1948). And the "judge's notes" is the historic basis for appellate review in England, which, I take it, is a mode not unlike that of the "bystander's record" in some of the States. I do not now mean to argue the main question nor its subsidiary problems nor to intimate any considered view upon them. But as an indication of the kind of issues that are raised before reaching a conclusion on the general and abstract proposition that failure to provide stenographic minutes without cost to an indigent defendant is a violation of a guaranty of the Fourteenth Amendment, it is useful to recall something of the history touching the means by which errors at *nisi* are brought to the attention of an appellate court.

trials? And if so what are the circumstances which provide a basis for that conclusion?

A reading of the Court's opinion with the care and deference that should be accorded it by a doubter has not revealed which if any of these possible federal claims has been denied so as to provide the necessary basis for a remand to the State court.

My difficulty, however, is not merely with ambiguity or, perhaps, obscurity in defining the federal right which was, or may have been, denied by the Illinois proceedings here for review. The fatal weakness, as I see it, is that the question of a denial of one or more putative federal rights is nowhere properly raised on the record before us.

It is true that petitioners allege they were convicted on the basis of coerced confessions and perjured testimony admitted in evidence in violation of the Fourteenth Amendment. But so far as appears from the record, these issues were fully litigated and determined at the trials. Until the cases came to this Court, no showing was made, or sought to be made, that circumstances were such as to warrant a new and independent inquiry into those determinations as a matter of federal right.

Whether these petitioners could have appealed from their convictions but did not, what procedures were available for perfecting an appeal, whether the circumstances were such as effectively to deny to these petitioners the opportunity for direct review of their convictions—answers to all these questions are indispensable to a judgment on the nature and scope of the federal right, if any, which Illinois may have denied these prisoners in this proceeding. But they are questions entangled in the procedural law of Illinois and in the facts and circumstances surrounding the conviction of these petitioners. The Illinois courts have never passed on them because they were never raised. And neither they nor we can

pass on them unless they are raised in some appropriate way. *Whitney* v. *California,* 274 U. S. 357, 379–380 (Mr. Justice Brandeis, concurring).

Of course, we read the self-composed claims of an indigent defendant with generous inferences and do not require elegance of pleading. We do not make such an exaction even of lawyers' pleadings. We ought to dig out of a complaint what is in it, and State courts surely feel themselves under a similar obligation when questions of constitutional right are involved. But this is entirely different from constructing a new case not even vaguely adumbrated in the complaint which moves a court to action. Still less ought this Court to originate litigation in this way when to do so is to disrespect the judgment of a State court and to decide, at least implicitly, difficult constitutional questions without the foundation of fact and circumstance needed to illumine their consideration.

In light of these views, I cannot join the Court's disposition of these cases. I think the writs should be dismissed for want of a properly presented federal question. Such a dismissal would not, of course, bar a new proceeding, differently conceived, tendering one or more of the federal questions here discussed. Certainly if, for whatever reason, the Illinois courts fail to afford corrective relief for the denial of a right guaranteed by the United States Constitution, the road to the federal court is open. *Mooney* v. *Holohan,* 294 U. S. 103; *Dowd* v. *United States ex rel. Cook,* 340 U. S. 206. At the core of the problem remains the precise definition of the basis for invoking the Fourteenth Amendment.

MR. JUSTICE MINTON, dissenting.

I dissent as I am of the opinion the Illinois Supreme Court based its judgment and opinion upon an adequate state ground.