Theodore GREEN

v.

UNITED STATES of America.

Misc. Civ. No. 58-2.

United States District Court
D. Massachusetts.

Jan. 30, 1958.

806

No appearances.

WYZANSKI, District Judge.

Theodore Green is now in the Federal Penitentiary at Alcatraz, California, serving concurrent sentences, the longest of which is 25 years, imposed in this Court on October 27, 1952 by Judge Ford, for bank robbery in violation of 18 U.S.C. § 2113(a) and (d).

Pursuant to 28 U.S.C. § 2255, on January 14, 1958, Green filed a motion to vacate the sentences. Judge Ford disqualified himself; I drew the case by lot.

Green's well-organized 17 page motion, elaborately furnished with relevant citations, alleges, in general, first, that in violation of the guarantee of due process of law clause of the Fifth Amendment to the United States Constitution he was denied a fair trial before Judge Ford because the Assistant United States Attorney, who prosecuted him, Edward Hassan, Esq., knowingly used false testimony to obtain his conviction; and second, that he was denied the effective assistance of counsel contemplated by the Sixth Amendment to the Constitution because his counsel, the late Herbert Callahan, Esq., was in collusion with Mr. Hassan.

Stated more precisely, the motion can fairly be said to have three parts. First, Green asserts that on October 2, 1952, before his trial began, he and others overheard Mr. Hassan persuade a co-defendant and witness named Roccaforte to commit perjury and they also overheard Mr. Hassan say that another witness named Bistany was going to commit perjury. Second, Green alleges that during his trial he advised his counsel, Mr. Callahan, of what he had overheard, that Mr. Callahan said it would be called to the Court's attention, that instead of so doing Mr. Callahan brought Mr. Hassan to see Green, and that the two lawyers both advised Green not to start any trouble about what he had heard as the matter of sentencing was still ahead. Third, Green alleges that after his trial, Bistany told one Edward Mansour, that Bistany "had made a deal with U. S. Attorney Hassan for complete immunity * * * if he would testify to a perjured statement that petitioner and Jacobonis robbed the Norwood Bank." [the bank in question]

An initial question raised not by the moving party but by the Clerk of this Court is whether technically this motion should be classified as a miscellaneous "civil action" for the purposes of the docket of this Court and of reports to the Administrative Office of the United States Courts. In my opinion for those purposes it should be so classified because for those purposes a habeas corpus proceeding is so classified, and this proceeding like a habeas corpus proceeding, "is an independent and collateral inquiry into the validity of the conviction." United States v. Hayman, 342 U.S. 205, 222, 72 S.Ct. 263, 274, 96 L.Ed. 232. In so ruling I am not unmindful that in § 2255 the draftsman has treated a motion thereunder as being filed in the original criminal case involving the prisoner; for the draftsman speaks in his third paragraph of "the motion and the files and records of *the case*." I construe that language as going no further than to make the records in the criminal case automatically available in the § 2255 proceeding, without the need of any special motion. Nor am I unmindful that a successful motion under § 2255 may result in vacating a sentence in a criminal

case. While this is an unusual consequence of a civil action, and differs from the result in a successful habeas corpus proceeding, it does not logically follow that the § 2255 proceeding is wholly criminal in nature.

However, it is important to emphasize the limited character of the ruling just made. I am quite unprepared to make a broad ruling that for every purpose a proceeding under § 2255 "is a special civil rather than a criminal proceeding", as it was described by Circuit Judge Kimbrough Stone in Taylor v. United States, 8 Cir., 229 F.2d 826, 832, note 5. It seems to me that it is more accurate to adopt Judge Woodbury's characterization of the proceeding as "a sort of hybrid." Mercado v. United States, 1 Cir., 183 F.2d 486, 487.

The proceeding under § 2255 has the following aspects in common with a civil proceeding. Appeals from the district court to the court of appeals are governed by the Rules of Civil Procedure. Paragraph 6 of § 2255 itself so provides. See F.R.C.P., Rule 81(a) (2), 28 U.S. C.A.; Mercado v. United States, supra; Bruno v. United States, 86 U.S.App.D.C. 118, 180 F.2d 393, 395. Perhaps the Rules of Civil Procedure apply to other aspects of the proceedings. See Moore's Federal Practice, 2nd ed., vol. 7, pp. 4436–4438. For example, at least one court has regarded the civil rules as setting the standards of detail requisite for a satisfactory pleading. See Taylor v. United States, 8 Cir., 229 F.2d 826, 833. And, what would be very significant, it may be that F.R.C.P.Rule 77(b) permits a court, with the consent of all the parties, to conduct a hearing outside the district where the sentence was imposed and in the district where the prisoner was held in custody. Were this possibility open, there would be less risk of a prisoner's escape or of his having at government expense a "joy ride" across the country, risks feared by the judges who proposed § 2255 [See the statement of Circuit Judge Stone quoted in footnote 25 of United States v. Hayman, 342 U.S. 205, 217, 72 S.Ct. 263, 271, 96 L.Ed. 232]

and which they sought to guard against in the rejected draft they submitted to Congress. [§ 2 of the draft, as described in footnote 23 of Hayman's case in 342 U.S. at page 215, 72 S.Ct. at page 270, would have allowed the sentencing court to decline jurisdiction rather than to transport across the continent "a dangerous prisoner, who * * * was confined in Alcatraz Penitentiary."]

 As in the special form of civil proceeding initiated by a petition for habeas corpus, [See 28 U.S.C. § 2243 and Walker v. Johnston, 312 U.S. 275, 61 S. Ct. 574, 85 L.Ed. 830] so in the proceeding initiated by a motion under § 2255, the prisoner need not be produced in court if the pleading raises only issues of law. 28 U.S.C. § 2255, Par. 3; Pollard v. United States, 352 U.S. 354, 357, 368–369, 77 S.Ct. 481, 1 L.Ed.2d 393; United States v. Hayman, 342 U.S. 205, 222–223, 72 S.Ct. 263, 96 L.Ed. 232; Stephens v. United States, 10 Cir., 246 F.2d 607; Johnson v. United States, 6 Cir., 239 F.2d 698, 699. Note 69 Harv. L.Rev. 1289, 1299. And if the only issues are issues of law the prisoner has no valid Constitutional claim to have the court appoint counsel for him to argue those issues. United States v. Caufield, 7 Cir., 207 F.2d 278, 280. However, if a motion filed under § 2255 is valid as a matter of law, and if its allegations are not conclusively contradicted by what § 2255 calls "the files and the records of the case", then the prisoner is entitled to a hearing conducted in open court. United States v. Paglia, 2 Cir., 190 F.2d 445, 448. See United States v. Hayman, 342 U.S. 205, 222, note 37, 72 S.Ct. 263, 274, 96 L.Ed. 232. Clearly he is entitled to be present at such a hearing if he is prepared to testify as to relevant matters. United States v. Hayman, 342 U.S. 205, at page 223, 72 S.Ct. 263 at page 274. It seems he is entitled to be present, even if he is not going to testify, if "there are substantial issues of fact as to events in which the prisoner participated." Ibid. And a strong argument can be made for the prisoner's right to attend any hearing on issues of

fact, regardless of his personal participation or knowledge, and solely on the bases of his being able to confront witnesses, to ask his own witnesses questions, to cross-examine the government's witnesses, and to prompt his counsel, if he has one. United States v. Paglia, 2 Cir., 190 F.2d 445, 448. People v. Richetti, 302 N.Y. 290, 297–298, 97 N.E. 2d 908, 911–912. See Ex parte Rosier, 76 U.S.App.D.C. 214, 133 F.2d 316, 325; Note 59 Yale L.J. 1183, 1187, note 19. But see contra: United States v. Jakalski, 7 Cir., 237 F.2d 503; Crowe v. United States, 4 Cir., 175 F.2d 799. Moreover, if there are issues of fact, an indigent prisoner, whose liberty of the person is at stake, may have by virtue not of the Sixth Amendment, but of the due process clause of the Fifth Amendment, a right to have the Court appoint counsel for him. Acc.: United States v. Paglia, supra. Contra: Crowe v. United States, supra.

Up to this point the rights which I have concluded that a prisoner has in a § 2255 proceeding are entirely consistent with the view that it is a special civil proceeding. For each right so far specified, including the right to counsel and the right to be present during a hearing of evidence is a right which seems to exist in a habeas corpus proceeding—which is admittedly a civil action. But it may be that the movant under § 2255 has rights never accorded in a civil action. The Supreme Court has held that on a hearing where his testimony is necessary the prisoner has a right to be brought to the sentencing court from another district by a writ like a writ of *habeas corpus ad testificandum* or *prosequendum*. United States v. Hayman, 342 U.S. 205, 221, note 35, 72 S.Ct. 263, 273, 96 L.Ed. 232. Perhaps the prisoner has a right to reach witnesses outside the district as though the case were a criminal case. Perhaps he has the right, if he is indigent, to invoke an analogy to Rule 17b of the Rules of Criminal Procedure, 18 U.S.C., in order to have the witnesses paid their fees by the government. Cf. 28 U.S.C. § 1825. But see

contra: United States v. Lang, D.C.E. D.N.Y., 73 F.Supp. 558, 560. Cf. Miller v. United States, 317 U.S. 192, 197–198, 63 S.Ct. 187, 87 L.Ed. 179. See original papers in, Melanson v. O'Brien, D.C.D. Mass., 105 F.Supp. 527. That is, he might assert that so far as concerns witnesses or counsel the § 2255 proceeding is an adjunct to the criminal case. Without in any way deciding these doubtful matters, it is not inappropriate specifically to state that the questions they raise are not foreclosed by my ruling that for the purpose of docketing this case it shall be treated as a civil action.

I turn now to the first question which is raised by Green himself. In his motion, Green conceded one fact which he recognized was a possible defect in his motion and which he argued should not be regarded as fatal. Green's concession is that the present motion is his second motion pursuant to 28 U.S.C. § 2255. On April 20, 1956 he filed in this Court a motion to vacate the same sentences here involved on the ground that due process of law under the Fifth Amendment was denied because the indictment submitted to the jury bore what he regarded as prejudicial indorsements. June 4, 1956, Judge Sweeney denied that motion. The Court of Appeals affirmed. Green v. United States, 1 Cir., 238 F.2d 400.

Green argues that the present motion, despite the fact it attacks the same sentences as the motion filed two years ago, differs so in its thrust that it does not fall within the words of 28 U.S.C. § 2255 providing that "The sentencing court shall not be required to entertain a second or successive motion for similar relief on behalf of the same prisoner." I accept the prisoner's contention that the grounds alleged in the motion before me are fundamentally different from those alleged in the motion before Judge Sweeney. And I conclude that under those circumstances the statute does not give me any discretion to refuse to entertain the new motion. Barrett v. Hunter, 10 Cir., 180 F.2d 510, 514–515, 20 A.L.R.2d 965; Hallowell v. United States, 5 Cir., 197 F.2d 926, 928.

If the decisions in Dunn v. United States, 6 Cir., 234 F.2d 219, 221 and United States v. Brown, 7 Cir., 207 F.2d 310, 311 be to the contrary, in my view they are unsound. See Note 59 Yale L.J. 1183, 1188, note 24.

■ Green, not being barred by his first motion under § 2255, has the right to have this Court scrutinize his present motion free of any prejudice due to the earlier pleading. But, as already pointed out, Green is not entitled to be present or to have a hearing in open court unless on its face his motion states in sufficient detail a valid ground for vacating his sentences. His detailed allegations must be such that if the details were proved and not contradicted, a court would be justified in setting aside the sentences under which he is now imprisoned. The Court now turns to a careful examination of the motion.

■ The first part of Green's motion is without merit as a matter of law. If Roccaforte did commit perjury, and If Mr. Hassan knew that Roccaforte was committing perjury, Green knew both these facts at the trial. On these matters he has no new information of substance that he did not possess on the morning before he was set to the bar for trial. Where *at his trial* a defendant has knowledge that the prosecutor is knowingly using perjured testimony, and the defendant does not then raise the point, ordinarily he cannot later have an adverse judgment set aside on the basis of that prior knowledge. Taylor v. United States, 8 Cir., 229 F.2d 826, 833–834; Price v. Johnston, 334 U.S. 266, 291, 68 S.Ct. 1049, 92 L.Ed. 1356. A defendant's failure to assert at the trial a known defense is usually an abandonment or waiver of that defense. United States v. Morgan, 346 U.S. 502, 511, note 22, 74 S.Ct. 247, 98 L.Ed. 248; Jennings v. State of Illinois, 342 U.S. 104, 108–109, 72 S.Ct. 123, 96 L.Ed. 119; Ex parte Spencer, 228 U.S. 652, 659–660, 33 S.Ct. 709, 57 L.Ed. 1010; Note, 70 Harv.L.Rev. 827, 870, note 281.

Green tries to overcome the rule just stated by alleging that his counsel Mr. Callahan collusively agreed with Mr. Hassan not to present to the Court the evidence that the prosecution was knowingly using perjured testimony. However, despite Green's use of the term "collusion", he does not allege with particularity facts leading to an inference of the grave charge of collusion. Taylor v. United States, 8 Cir., 229 F.2d 826, 832; Stephens v. United States, 10 Cir., 246 F.2d 607. All that appears is that Green's lawyer did not choose to press one of his client's contentions, and that the lawyer agreed with the prosecutor that it would be foolish to raise the contention. This is a far cry from the kind of professional misconduct which would "shock the conscience of the Court and make the proceedings a farce and a mockery of justice." United States v. Wight, 2 Cir., 176 F.2d 376, 379; United States v. Pisciotta, 2 Cir., 199 F.2d 603, 607. Even if the facts alleged in this branch of the motion could be proved, Green would not be entitled to have his sentences vacated.

■ We now come to the third branch of Green's motion where he covers what he claims he learned after his trial. His allegation is that Bistany told one Mansour that he had made a deal with the United States Attorney to give perjured testimony. This allegation hardly states that Mansour heard Bistany say that the United States Attorney himself knew the falsity of the testimony subject to the asserted deal. Therefore on its face the allegation may be fatally defective. "It is clearly established that an appellant [or petitioner] must do more to void his conviction than to show the conviction was secured by perjured testimony. He must also show that the prosecution used such testimony knowingly." United States v. Rutkin, 3 Cir., 212 F.2d 641, 643. But whether or not the allegation be defective, [see Rutkin's case, just cited, at page 644, par. 7] Mansour's statement about Mr. Hassan's alleged knowledge is the rankest hearsay. Such hearsay unsupported by specific references to competent, relevant, and material sup-

porting evidence does not entitle a prisoner to a hearing. Johnson v. United States, 6 Cir., 239 F.2d 698, 699. For even if the hearsay were offered a court would not be justified in basing upon it an order vacating a criminal sentence. Taylor v. United States, 8 Cir., 229 F.2d 826, 833.

The motion in all its parts as well as in its entirety being without merit on its face, the motion is denied.