**UNITED STATES ex rel. James J. CARRONO, Appellant,**

v.

**Mark S. RICHMOND, Warden, Connecticut State Prison, Appellee.**

No. 277, Docket 25947.

United States Court of Appeals Second Circuit.

Argued April 4, 1960.

Decided May 17, 1960.

George C. Hastings, Hartford, Conn., for appellant.

George D. Stoughton, Asst. State's Atty. for Hartford County, Hartford, Conn. (John D. LaBelle, State's Atty. for Hartford County, Manchester, Conn., and J. Read Murphy, Asst. State's Atty. for Hartford County, Hartford, Conn., on the brief), for appellee.

Before LUMBARD, Chief Judge, and HINCKS and FRIENDLY, Circuit Judges.

HINCKS, Circuit Judge.

This case raises the question whether the relator, in accordance with 28 U.S. C.A. § 2254, had exhausted his remedies in the State courts before he brought his petition for *habeas corpus* in the court below. Judge Smith, holding that he had not, 177 F.Supp. 503, 177 F.Supp. 504, dismissed his petition. However, he certified under 28 U.S.C.A. § 2253 that there was probable cause for appeal and assigned counsel with whose aid this appeal has been prosecuted.

In 1957 the relator pleaded guilty to murder in the second degree and was sentenced to life imprisonment by the Superior Court for Hartford County. He is currently confined in the Connecticut State Prison and he alleges in his federal *habeas corpus* petition that such detention is unlawful since he was denied certain basic constitutional rights during the course of his conviction in the State court. Although he did not take a direct appeal from his conviction, it is clear that in a subsequent *habeas corpus* hearing, before the Superior Court of Connecticut he raised at least one of the federal claims contained in his petition below, viz., that his plea was coerced. This petition was denied by the Superior Court on June 25, 1958. The relator then, on June 30, 1958, moved that court to reopen its judgment, to appoint counsel, and to file a memorandum of decision on the denial of the petition. These motions were all promptly denied. The relator's next step is revealed in a letter dated November 17, 1958, which was sent to him by the Clerk of the Connecticut Supreme Court of Errors. The Clerk wrote:

"Replying to your letter of November 13, 1958 please be advised that a fee and bond must accompany all appeals to the Supreme Court of Errors of the State of Connecticut."

It appears that the relator was originally possessed of sufficient means to pay, and he had, in fact, paid the fee required to file his *habeas corpus* petition in the Superior Court, but he was unable to bear the cost of the filing and bond fees which are required to lodge an appeal in the Supreme Court of Errors. Subsequent to his receipt of the Clerk's letter the relator made no effort to proceed further in the State courts, nor did he attempt to obtain review of the Superior Court's denial of his *habeas corpus* petition by means of a writ of certiorari from the Supreme Court of the United States.

It was the relator's failure to apply to the Supreme Court for certiorari which led the court below to conclude that he had failed to exhaust his State remedies. It reasoned that the denial of the petition for *habeas corpus* by the State Superior Court was a final state adjudication of his federal claims. It ruled that, because of his failure to apply to the United States Supreme Court for certiorari from the Superior Court's judgment, a lower federal court should not grant a writ of *habeas corpus*, at least if the United States Supreme Court under 28 U.S.C.A. § 1257 had jurisdiction by certiorari to review the Superior Court decision. It found—rightly we think—no extraordinary circumstances calling for a relaxation of the exhaustion requirement. See Darr v. Burford, 339 U.S. 200, 70 S.Ct. 587, 94 L.Ed. 761; Collins v. Frisbie, 6 Cir., 189 F.2d 464, and Frisbie v. Collins, 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541. The crucial question

was whether the Supreme Court had certiorari jurisdiction. More specifically, the question was, in the language of § 1257, whether the Superior Court was the "highest court * * * in which a decision could be had."

While recognizing the absence of direct Supreme Court authority for his conclusion, Judge Smith on the strength of precedent thought to be analogous concluded that such jurisdiction existed and that, because it had not been invoked, the relator had failed to meet the requirement of § 2254 calling for exhaustion of state court remedies. But this conclusion seems inconsistent with cases in at least two circuits. Buchanan v. O'Brien, 1 Cir., 181 F.2d 601, 604–605; O'Brien v. Lindsey, 1 Cir., 204 F.2d 359; Robbins v. Green, 1 Cir., 218 F.2d 192; Dolan v. Alvis, 6 Cir., 186 F.2d 586; Sims v. Alvis, 6 Cir., 242 F.2d 506; Shook v. State of Ohio, 6 Cir., 274 F.2d 853. And we have difficulty in squaring the conclusion with our own holding in United States ex rel. Martin v. Walker, 203 F.2d 563, affirming D.C., 111 F.Supp. 455. However, we find it unnecessary to decide whether the Supreme Court's jurisdiction under § 1257 extends to decisions of a lower state court where an appellant seeks to excuse his failure to go higher solely because of financial inability to pursue remedies afforded by state law. For we affirm the order below on another ground.

▮ In the 1957 session of the Connecticut General Assembly, the following provision was added to those General Statutes which deal with *habeas corpus*.

"No appeal from the judgment rendered in a habeas corpus proceeding brought in order to obtain his release or by or in behalf of one who has been convicted of crime shall be taken unless the judge before whom the case was tried or a justice of the supreme court of errors, within ten days after the case is decided, certifies that a question is involved in the decision which ought to be reviewed by the supreme court of errors." P.A.No. 482, Public Acts of 1957. Sec. 52–470, General Statutes of Connecticut.

This is a jurisdictional limitation which applies equally to rich and poor.[1] In view of this limitation, it follows that in every Connecticut case in which a petition for *habeas corpus* is denied and the statutory certificate has been sought but not obtained, the state court denying the writ is "the highest court of the State in which a decision could be had" within the meaning of 28 U.S.C.A. § 1257. We think it plain that in such a case the Supreme Court would have power to review the judgment of such a court. Canizio v. People of State of New York, 327 U.S. 82, 66 S.Ct. 452, 90 L.Ed. 545; Robertson & Kirkham, Jurisdiction of the Supreme Court of the United States (Ed.1951), Sec. 50.

▮ This statute was in effect at the time of relator's *habeas corpus* proceedings in the Superior Court. Yet he fails to show us that he obtained, or even applied for, the statutory certificate which is now the foundation of appellate jurisdiction. This failure, we hold, sufficiently supports the order below dismissing the federal petition for failure to exhaust State court remedies.

If, on application, the statutory certificate had been denied, the road to the Supreme Court of the United States would have been clear. If, on the other hand, the certificate were granted and the Connecticut Supreme Court of Errors thus acquired jurisdiction to entertain an appeal, it cannot be said with assurance, especially in view of the recent Act just cited, that the relator's indigence would make it impossible for him to prosecute an appeal.[2] The impact of that Act on appeals *in forma pauperis* from orders

1. It will be noted that in this respect the State Act differs from 28 U.S.C.A. § 1915 (a), the last sentence of which is a limitation only on appeals *in forma pauperis*.

2. No application for a certificate under Sec. 52–470 having been made, the Clerk's letter noted in an earlier part of this opinion cannot fairly be construed as directed to the situation which would have existed if a certificate had been granted.

denying *habeas corpus* has not yet been assessed by the Connecticut courts. Now that the General Statutes of Connecticut make the above-quoted provision for high judicial officers to certify which appeals have sufficient merit to be allowed, we find it hard to believe that other statutes would be construed to preclude appeals thus certified as meritorious because of the relator's inability to pay court fees.

We are not unaware of such cases as State v. Reddick, 139 Conn. 398, 94 A.D. 613, and State v. Zukauskas, 132 Conn. 450, 451, 45 A.2d 289, in which the Supreme Court of Errors held that it had no power to waive its statutory fees in a direct criminal appeal. Yet the same cases noted that access to that court was not thereby necessarily foreclosed to an indigent since his special public defender was, subject to the court's approval, entitled to reimbursement for all his necessary expenses, including those involved in prosecuting an appeal. See State v. Reid, 146 Conn. 227, 149 A.2d 698. Although the language providing for the appointment and compensation of public defenders would appear to limit their function to the direct defense of indigents charged with crime, Secs. 54–80, 54–81, General Statutes of Connecticut, yet in Wojculewicz v. Cummings, 143 Conn. 624, 124 A.2d 886, an indigent was successfully represented by a special public defender on his appeal from a denial of *habeas corpus* to the Supreme Court of Errors. And the "public defender, or an attorney appointed by the court to assist him or to act in his place, in a special case or cases, while acting in his official capacity or in the capacity for which he was appointed," is not required to pay Supreme Court fees. Sec. 52–259a, General Statutes of Connecticut. It well may be that if a state court found enough merit in a *habeas* petition to warrant the statutory certificate of Sec. 52–470 of the Connecticut Statutes it would, as was apparently done in the Wojculewicz case, appoint a special public defender who under Sec. 52–259a could prosecute the appeal without cost to the indigent appellant.

We cannot say that to have invoked the procedure of Sec. 52–470 would, because of the relator's indigence, have been a futile act.

We conclude that for failure so to do the relator has not exhausted state remedies.

Affirmed.