**UNITED STATES ex rel. Irma RUSH**

v.

**Janet YORK, Superintendent, Connecticut State Farm for Women.**

**Civ. No. 12173.**

United States District Court
D. Connecticut.

Nov. 29, 1967.

William D. Graham, Hartford, Conn., for plaintiff.

Edward R. Smoragiewicz, Asst. Pros. Atty., Hartford, Conn., for State of Connecticut.

## MEMORANDUM OF DECISION ON PETITION FOR WRIT OF HABEAS CORPUS

BLUMENFELD, District Judge.

Irma Rush petitions for a writ of habeas corpus on the ground that her present imprisonment is based on a criminal proceeding against her in which she was denied her constitutional right to the assistance of counsel. She was charged with the fraudulent issue of three checks, one for $10.00, one for $4.00, and one for $7.50, drawn on her bank account closed some eight months earlier. Although a twenty year old minor, a welfare recipient, and obviously indigent and pregnant (the baby was born six days after she was sentenced), no attorney was appointed to represent her during those proceedings in the Circuit Court. With a case worker of the State Welfare Department appointed as her guardian ad litem, the petitioner was put to plea immediately thereafter and she pleaded guilty to all three counts. On the basis of a report and recommendation by her guardian ad litem (and case worker), the petitioner was sentenced to an indeterminate three year term in the State Farm for Women.[1]

### Exhaustion of State Remedies

The threshold question and here the principal issue is whether the petitioner has exhausted her state remedies. The principle of exhaustion of state remedies is one of comity and not jurisdiction. Wainwright v. Simpson, 360 F.2d 307 (5th Cir. 1966). In other words, "The rule of exhaustion 'is not one defining power but one which relates to the appropriate exercise of power.'"

[1]. The record of disposition on the three counts as signed by the judge reads: "Indefinite term State Farm for Women. Concurrent." The petitioner was prosecuted for violation of Conn.Gen.Stats. § 53–361, which specifies a penalty of a fine of not more than $1,000.00 or imprisonment for not more than 1 year or both. The mittimus committed her to the State Farm for Women presumably under Conn.Gen.Stats. § 17–360, which provides a wide net of penalties for women over 16 years of age who deserve punishment. Since the petitioner was not convicted of being an "unmarried [girl] between the ages of sixteen and twenty-one who [was] in manifest danger of falling into habits of vice," the justification for the 3 year maximum sentence permitted by § 17–360 is that she pled guilty to the commission of misdemeanors.

Fay v. Noia, 372 U.S. 391, 420, 83 S.Ct. 822, 839, 9 L.Ed.2d 837 (1963). Simply stated, the principle underlying the exhaustion requirement is that if the doors of the state and federal courts are both open a state prisoner ought to try the state door first.

How this principle should be applied in federal courts is elaborated in 28 U.S.C. § 2254.[2]

The respondent advances the interesting contention that the petitioner has not exhausted her state remedies by failing to seek relief by way of habeas corpus in the state court. But when Mr. William D. Graham, Senior Attorney of the Legal Aid Department of the City of Hartford, sought to file a petition for a writ of habeas corpus in the proper venue, the clerk of the Superior Court cryptically advised him "that the Clerk's Office has no authority to waive the entry fee or costs in a Habeas Corpus action." Any possible ambiguity in the letter of the court clerk to Mr. Graham was dispelled when on October 30, 1967, he advised the prosecuting attorney for the Circuit Court (who is counsel for the respondent in this case) that the

> "Clerk's Office has no authority to waive the entry fee of $45.00 in a Habeas Corpus action, except where the petitioner is represented by the Public Defender or Special Public Defender so appointed."

On more than one occasion, this court has expressly held that such an obstacle imposed by Connecticut to an indigent's pursuit of a state remedy does not bar him from applying to the federal courts for a writ of habeas corpus. United States ex rel. Embree v. Cummings, 233

F.2d 188, 189 (2d Cir. 1956). At a later date, it was only in response to the mandate of Judge Smith (now Circuit Judge) that LeRoy Nash, an indigent state prisoner serving a sentence of 25–30 years, was granted the right to appeal from his conviction without payment of costs. The state did not appeal from Judge Smith's determination that state court remedies had been exhausted by the act of the Superior Court's clerk in returning to Nash his application for a writ of habeas corpus for lack of payment of the entry fee. United States ex rel. Nash v. Richmond, Civil No. 7718 (D.Conn. Sept. 12, 1959). See State v. Nash, 149 Conn. 655, 656–57, 183 A.2d 275, 276–77, cert. denied, 371 U.S. 868, 83 S.Ct. 130, 9 L. Ed.2d 104 (1962).

The respondent's contention that Miss Rush could have filed her petition in the Superior Court rests on the premise that she should have sought the assistance of a public defender to act as conduit for filing her petition. But that contention is distorted from the start. It is an uncritical attempt to squeeze the right of an indigent prisoner to bring a habeas action without payment of court costs under the label of his sixth amendment right to the assistance of counsel in a criminal proceeding.

As always, it is important to reach the precise question presented. The right of an indigent prisoner to petition for a writ of habeas corpus without the payment of court fees is not the controlling issue. That has been settled. For more than a decade, since Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956), it has been held that equal justice is not afford-

---

2. "§ 2254. State custody; remedies in State Courts

  \*  \*  \*  \*  \*

"(b) An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

"(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented."

ed where review "depends on the amount of money" a criminal defendant has. (351 U.S. at 19, 76 S.Ct. at 591). Cf. State v. Hudson, 154 Conn. 631, 635, n. 3, 228 A.2d 132, 134, n. 3 (1967). And where a state prisoner sought a writ of habeas corpus the United States Supreme Court, citing from its prior opinion in Smith v. Bennett, 365 U.S. 708, 709, 81 S.Ct. 895, 6 L.Ed.2d 39 (1961), said:

"We specifically held in *Smith* that having established a post-conviction procedure, a State cannot condition its availability to an indigent upon any financial consideration. And we held in *Lane* [Lane v. Brown, 372 U.S. 477, 83 S.Ct. 768, 9 L.Ed.2d 892 (1963)] that the same rule applies to protect an indigent against a financial obstacle to the exercise of a state-created right to appeal from an adverse decision in a post-conviction proceeding." Long v. District Court of Iowa, 385 U.S. 192, 194, 87 S.Ct. 362, 364, 17 L.Ed.2d 290 (1966).

Here, the question is whether the denial of the right to file a petition for a writ of habeas corpus without payment of court costs to an indigent state prisoner who is represented by counsel other than a public defender designated by the court operates to exhaust her state court remedies. Cf. Jennings v. Illinois, 342 U.S. 104, 72 S.Ct. 123, 96 L.Ed. 119 (1951).

### The Denial of the Remedy

■ While there may be no warrant for putting the imprimatur of permissible authority on a clerk of the Superior Court to make determinations of law contrary to law, there is at present no expression in Connecticut's decisional and statutory law or in its Rules of Practice on which to ground a valid challenge to the clerk's view. A clerk of the Superior Court has informed me that he is under oral instructions from the judiciary to permit the filing of petitions for a writ of habeas corpus by only those indigent prisoners who are incarcerated *at the State Prison* without payment of fees.[3] Such informal advice (hearsay on hearsay) is no "justification for this court to consider this application moot and to order petitioner to pursue a post-conviction remedy" pro se. Spaulding v. Taylor, 234 F.Supp. 747, 748 (D.Kan.), aff'd, 336 F.2d 192 (10th Cir. 1964).

### The Role of the Public Defender

The statute providing for the office of public defender sets forth his duties: "Each such public defender *shall act as attorney in the defense of any person charged with crime * * ** when such person is without funds sufficient to employ counsel for such defense." Conn. Gen.Stats. § 54–80 (emphasis added).

This year, in State v. Hudson, 154 Conn. 631, 228 A.2d 132, the court spelled out the general nature of Connecticut's schematic plan for the protection of the rights of indigent persons accused of crime, as recently amplified to keep pace with constitutional equal protection requirements. The favored place of public defenders in this scheme was emphasized. Only two of the several elements are of special significance here. The first, Conn.Gen.Stats. § 52–259a, was construed by the court, 154 Conn. at 636, 228 A.2d at 135: "Public defenders and attorneys appointed to assist a public defender or to act in his place are, *while acting in such a capacity,* expressly exempted from the requirement of the payment of jury fees, court fees and the record fee in this court." (Emphasis added). The second is the pertinent portion of the Rules of court[4] as embodied in the court's opinion at 636, 228 A.2d at 135: " * * * public defenders may be appointed (§ 472B) 'in any matter arising out of a detention or prosecution in a criminal case' where a person '*is entitled to counsel as a matter of law* and is without funds sufficient to employ counsel' § 472D." (Emphasis added.)

---

3. Miss Rush is incarcerated at a different institution, the State Farm for Women.

4. Section 54–80 empowers the judges to adopt such rules.

(Conn.Prac.Book, Supp.1967, effective Sept. 1, 1965.)

Assuming that a petition for a writ of habeas corpus might be construed in isolation to be a "matter arising out of a determination * * * in a criminal proceeding," it is not a proceeding in which the prisoner "is charged with crime" (§ 54–80), cf. Redway v. Walker, 13 Conn.Supp. 240, aff'd, 132 Conn. 300, 43 A.2d 748 (1945), or in which a prisoner "is entitled to counsel as a matter of law." There is no need to call the roll of the many cases, federal and state, which have held that there is no right to counsel as a matter of law in habeas corpus proceedings. The usual rationale is simply that habeas corpus is a civil proceeding and so not within the "criminal prosecutions" language of the sixth amendment, e. g., Flowers v. Oklahoma, 356 F.2d 916 (10th Cir. 1966); Dorsey v. Gill, 80 U.S.App.D.C. 9, 148 F.2d 857, 877, (D.C.Cir) cert. denied, 325 U.S. 890, 65 S.Ct. 1580, 89 L.Ed. 2003 (1945); United States ex rel. Duchin v. Follette, 251 F.Supp. 1006, 1009, n. 7 (S.D.N.Y.1966). Cf. Dillon v. United States, 307 F.2d 445, 446–47, n. 3 (9th Cir. 1962). While the Supreme Court has not spoken directly to this point, there is some indication of its view. In Long v. District Court of Iowa, 385 U.S. 192, 87 S.Ct. 362, where Long's motion for (1) appointment of counsel [5] and (2) for a free transcript of habeas corpus proceeding in the state court for use on

appeal had been denied, the United States Supreme Court granted his application for a writ of certiorari expressly "limited to the question whether the failure to furnish a transcript without payment for use on appeal deprived the petitioner of equal protection of the laws." (383 U.S. 925, 86 S.Ct. 934, 15 L.Ed.2d 844 (1966)).[6]

*Use of Public Defender to Avoid Costs*

Connecticut's statute or Rules of court do not authorize a public defender or impose the duty on him to represent an indigent habeas corpus petitioner.

It follows that he does not have the authority to incur the cost of court fees as a reimbursable expense in behalf of a prisoner. Such an indirect method of relieving an indigent defendant convicted of a capital crime of the burden of court costs on a direct appeal was disclosed in State v. Zukauskas, 132 Conn. 450, 45 A.2d 289 (1945), where a motion for an order directing the Superior Court to permit the defendant (convicted of murder in the first degree) to appeal at the expense of the state was denied. After noting in a per curiam footnoted at 132 Conn. 451–52, 45 A.2d 294 that "the statutes and rules * * * except no one from the requirement that certain fees be paid in connection with appellate proceedings, and a court is without power to make such an exception in a criminal proceeding even on the ground of lack of resources of a defendant," the Su-

---

5. Appointment of counsel was denied by the state court on the ground that "Habeas Corpus being a civil action there is no provision * * * for the appointment of counsel." (385 U.S. at 193, 87 S.Ct. at 363).

6. Denial of certiorari by the Supreme Court cannot be regarded as having any substantive connotations in habeas corpus cases, Brown v. Allen, 344 U.S. 443, 488 et seq., 73 S.Ct. 397, 97 L.Ed. 469 (1952), (see Mr. Justice Frankfurter's dissenting opinion on this point in which five judges concurred), except that when the reasons for denial are given the decision will have the effect indicated by the reasons stated.

What the Supreme Court did in *Long* lies somewhere between. Consideration of the petition sufficiently to limit the question it would review to exclude that part which it would not, may not furnish any weight to support the Iowa court's decision on the excluded part. However, it is not wholly irrelevant to infer that the Supreme Court's discrimination at least discloses an awareness of a difference between constitutional underpinnings for the right to a free transcript for use on appeal in a habeas corpus case from the right to counsel. I would be most reluctant to say that what the Supreme Court decided on Long's petition meant nothing.

preme Court spelled out how this limitation might be overcome. It pointed out that a public defender is entitled to have taxed and paid to him his necessary expenses to defend an accused and to seek advance court approval when they are anticipated.[7] Accordingly, it continued: "whenever a public defender proposes to appeal from a judgment of conviction, it is sound practice for him to seek approval in advance of the incurring of expense (including court fees) for that purpose." (132 Conn. at 452, n. 1, 45 A.2d at 294, n. 1).

A recent appraisal of State v. Reddick, 139 Conn. 398, 94 A.2d 613 (1953), was made in State v. Clark, 4 Conn.Cir. 570, 571, 237 A.2d 105 (1967). This was a motion for review of the denial of an order that the expense of procuring a transcript for the purpose of an indigent's appeal be paid by the state. Following the rationale of State v. Reddick,[8] the Appellate Division under its power to supervise proceedings on appeal ordered that the cost of a transcript for use on appeal be paid by the state. It appeared in the record before them that the defendant's motion to waive fees, costs, and security on appeal had been granted by the trial court. Although carefully mentioning that this affirmative ruling had not been put in issue, the Appellate Division frowned upon it. It quoted from State v. Reddick, 139 Conn. at 400, 94 A.2d at 614:

> "In cases in which the defendant is represented by private counsel as distinguished from the public defender, the trial court is without power to except even an impoverished accused from the payment of the court fees prescribed by statute or to bring about the same result by ordering reimbursement for such payment,"

and then elongated this sentence by adding its own words,

> "and we feel that this should apply to private organizations who provide counsel free of charge, for the defendant does not have the right to counsel of her own choice so long as she claims to be indigent."

Thus, Connecticut's courts have clearly enunciated a rule that even on a direct

---

**7.** It was apparently such an indirect method of evading the required payment of court fees to prosecute an appeal in a capital criminal case which Chief Judge Hincks in a reasoned dictum in United States ex rel. Carrono v. Richmond, 279 F.2d 170, 173 (2d Cir. 1960), over-sanguinely thought might have been employed in Wojculewicz v. Cummings, 143 Conn. 624, 124 A.2d 886 (1956), a habeas corpus action. However, a search of the record in the habeas case of *Wojculewicz* reveals only that the entry fee in the Superior Court was paid by the plaintiff. There is nothing to show that the special public defender obtained advance approval from the court to pay the entry fee and charge it as an expense for the defense of Wojculewicz.

**8.** State v. Reddick was an appeal from the denial of his counsel's motion in behalf of a defendant convicted of murder in the first degree for an order that the court fees chargeable on appeal and the expense of procuring a transcript of the testimony and printing the brief and appendix be paid by the state. The Supreme Court noted 139 Conn. at 401, 94 A.2d at 614:
> "It is the well-established policy of our law that a person convicted of murder in the first degree should not be denied an opportunity to appeal, and the fact that he is without resources should not be allowed to deprive him of it. State v. Zukauskas [132 Conn. 450, 452, 45 A.2d 289] ; State v. Klein, [95 Conn. 451, 453, 112 A. 524 (1920)]. This *policy applies to cases in which the sentence is life imprisonment * * * as well as to cases in which the death penalty is imposed.*" (Emphasis added.)

The Supreme Court construed its supervision and control of proceedings on appeal as embraced within the Rules of Practice, Conn.Prac.Book § 435 (1951), to give it power to enter its own order that the necessary costs for the transcript and for printing the defendant's brief and appendix required to present an appeal under its rules be taxed as a part of the expense of prosecution and be paid by the state.

appeal from a criminal conviction a defendant, although indigent, must pay fees of court if he is represented by counsel of his own choice.

■■ Even to assume that Connecticut courts would somehow tortuously construe its own rules to embrace a power in a public defender to obtain a waiver of court fees for an indigent habeas corpus petitioner, this would not justify imposition of the condition that she must seek representation by a public defender. Although an indigent accused has no constitutional right to arbitrarily reject the services of a public defender and compel the state to engage and compensate counsel of her own choice, State v. Nash, 149 Conn. at 661, 183 A.2d 275; Nash v. Reincke, 212 F.Supp. 877 (D.Conn.1962), aff'd, 325 F.2d 310 (2d Cir. 1963), neither does the state have the right to condition an indigent's access to its courts by compelling her either to be represented by a public defender or proceed pro se. "The right to petition the courts cannot be so handicapped." Railroad Trainman v. Virginia ex rel. Virginia State Bar, 377 U.S. 1, 7, 84 S.Ct. 1113, 1117, 12 L.Ed.2d 89 (1963). See NAACP v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963). Indigents may be represented by lawyers provided without charge through Neighborhood Legal Services, funded by the Office of Economic Opportunity under the Federal Poverty Program as in State v. Clark, or through the Legal Aid Department of the City of Hartford, funded by community contributions as in this case, or through anyone else.[9]

Although the petitioner might have sought to file her petition pro se as a poor person without disclosing that she was represented by counsel, such a subterfuge would not be likely to go unnoticed. Cf. State v. Reddick, 139 Conn. 398, 94 A.2d 613; State v. Clark, 4 Conn. Cir. 570, 237 A.2d 105 (1967); and indeed, State v. Hudson, 154 Conn. at 637, 228 A.2d 132.[10]

It is partly in deference to the delicacy of federal-state relationship in this sensitive area that I have quoted so much from state authorities to show that they reveal no link between the acknowledged rights of an indigent criminal defendant to be relieved of court costs and to the assistance of counsel throughout all phases of the guilt determining process, and his right to seek the post-conviction remedy of habeas corpus after the original criminal proceedings have ended. Cf. Dillon v. United States, 307 F.2d at 446–47, n. 3.

To force an indigent prisoner to shift for herself and to attempt the impossible task of solving an impossible riddle in order to obtain a state post-conviction remedy to vindicate her constitutionally guaranteed rights is more than ought be required to satisfy the exhaustion requirements. If "to interpose any financial consideration [11] between an indigent prisoner of the State and his exercise of a state right to sue for his liberty is to deny that prisoner the equal protection of the laws," Smith v. Bennett, 365 U.S. at 709, 81 S.Ct. at 896, reiterated in Long v. District Court of Iowa, 385 U.S. 192, 87 S.Ct. 362, surely the petitioner's lack of the $45.00 needed for instituting

9. In habeas corpus matters, traditionally courts have appointed counsel to aid indigent petitioners in those cases where a hearing is required to resolve disputed factual issues or where the legal issues are arguable on their merits, cf. United States ex rel. Marshall v. Wilkins, 338 F. 2d 404, 406 (2d Cir. 1964), and the members of the bar have unhesitatingly fulfilled that imposed responsibility in such cases with diligence and competency no less than privately retained counsel, both before and since the advent of the Criminal Justice Act.

10. No claim was made here that the petitioner created her indigency by using funds to employ counsel, a device which might not be countenanced. Cf. United States ex rel. Nash v. Richmond, Civil No. 7718 (D.Conn. Sept. 12, 1959).

11. The entry fee was $4.00 in Long.

an original habeas corpus proceeding in Connecticut's Superior Court is a "[*circumstance*] rendering such [theoretically available] process ineffective to protect the rights of the prisoner." 28 U.S.C. § 2254 (emphasis added).

### Conclusion

■■ The petitioner's indigency during the criminal proceedings and when she sought post-conviction relief is not disputed. That she did not receive, or waive, or reject the assistance of counsel when she was put to plea, or when she was convicted, or when she was sentenced, is not questioned. Under such circumstances a long line of recent authorities establish that the conviction on her plea of guilty was constitutionally impermissible. E. g., Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891; Lane v. Brown, 372 U.S. 477, 83 S.Ct. 768, 9 L.Ed.2d 892 (1963); Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); United States ex rel. Durocher v. LaVallee, 330 F.2d 303 (2d Cir.), cert. denied, 377 U.S. 998, 84 S.Ct. 1921, 12 L.Ed.2d 1048 (1964). See Arbo v. Hegstrom, 261 F. Supp. 397 (D.Conn.1966). Cf. DeJoseph v. Connecticut, 385 U.S. 982, 87 S.Ct. 526, 17 L.Ed.2d 443 (1966) (dissent of Mr. Justice Stewart to denial of certiorari). There is nothing of substance to be appraised by the state courts. To hold in abeyance vindication of the petitioner's constitutional rights under the circumstances present here is wholly unwarranted. See United States ex rel. Lusterino v. Dros, 260 F.Supp. 13, 17 (S.D. N.Y.1966). The niceties of federalism do not demand "repetitious applications to state courts." Roberts v. LaVallee, 389 U.S. 40, 88 S.Ct. 194, 19 L.Ed.2d 41 (1967).

It is ordered that within ten (10) days from today, the state shall on its own motion vacate the judgment of conviction, erase petitioner's plea of guilty, and schedule an early re-arraignment of petitioner, failing which petitioner will be discharged from custody.